In re Disbarment of Richard F. Boyer.

No. 45784.

January 20, 1942.

Stipp, Perry, Bannister & Starzinger, by E. D. Perry and A. A. Herrick, for appellant.

John M. Rankin, Attorney General, by Jens Grothe, Assistant Attorney General, for appellee.

Oliver, J.—Appellant has been engaged in the practice of law since 1934. He was 30 years old at the time of the trial. The proceedings to revoke his license as an attorney were instituted upon the accusation of one E. E. Fulenwider, a former client.

Several of the charges concerned appellant's conduct in connection with said relationship. These and some of the other charges were supported mainly by the testimony of Fulenwider. None of the foregoing charges were sustained by the trial

court, which found Fulenwider "unworthy of belief". The record amply justifies this finding. Both sides appear to have recognized this and have not encumbered the printed abstracts with his testimony. Therefore, we will pass at once to other charges.

■ . Fulenwider was a salesman for various flour mills. Appellant had conducted some litigation concerning this business. Neither of them had financial worth. They conceived the idea of securing and operating a flour mill at Onawa, Iowa, which was for sale at $5,000. Jane R. Dilley was a widow with one child. She resided in Des Moines, Iowa. Since the death of her husband several years previously, appellant had been her attorney and financial advisor. Appellant told Fulenwider he thought funds to finance the mill could be secured from Mrs. Dilley and introduced Fulenwider to her. Appellant told Mrs. Dilley that if she would invest in said property she would receive a first mortgage thereon, which would furnish adequate security for her money. A corporation was to be formed, the stock of which was to be issued without payment, ⅜ to appellant, ⅜ to Fulenwider and ¼ to Mrs. Dilley. The first mortgage was to be executed by the corporation and the note secured thereby signed by appellant and Fulenwider who were to insure their lives in favor of the corporation.

Accordingly, Mrs. Dilley turned over to appellant $4,000, $2,500 of which was paid upon the purchase price of the mill. It was understood that changes in equipment would cost about $2,000. Subsequently, additional funds were, from time to time, secured· from her and at the expiration of about one year she had advanced to appellant for the mill a total of $22,475, and had received appellant's personal notes therefor. She relied on his assurances that the mill when working would be ample security.

After Mrs. Dilley had advanced a total of $17,900, the corporation, through appellant and Fulenwider, gave a Mrs. Berry a mortgage on the mill property for $4,000 to cover a lumber bill and advancements by Mrs. Berry. Concealing from Mrs. Dilley the execution of the Berry mortgage, appellant secured from Mrs. Dilley an additional $4,000 loan. Appellant admitted that in obtaining this loan he deceived his

own client, knowing she had placed trust and confidence in him.

During the period Mrs. Dilley was making these loans for the mill, appellant and Fulenwider were withdrawing money for themselves. Fulenwider secured a total of $3,600, part of which was in the form of checks on bank accounts of the mill, signed by appellant. For himself appellant took $2,000. He testified his withdrawals were for traveling expenses and for time devoted to the mill. However, appellant had previously testified, in a hearing in federal court, that the money borrowed from Mrs. Dilley was to be used solely in remodeling the mill and for operating capital, that it was not to be paid out to Fulenwider or appellant, and that Mrs. Dilley knew nothing about their withdrawals until after an investigation of the affairs of the mill was made.

Late in 1940, the mill company went into receivership and later into bankruptcy. Mrs. Dilley had not been given a first mortgage or any mortgage upon the property. The Berry first mortgage was foreclosed but an arrangement was made with Mrs. Berry whereby Mrs. Dilley acquired a joint interest in the property. The $22,475 secured from Mrs. Dilley through the fraud and misconduct of appellant constituted the bulk of her estate and its loss left her in an embarrassed financial condition.

Appellant handled certain litigation for the Schminke Milling Company of Nebraska City, Nebraska. Mr. Schminke testified appellant had been instructed to start one case in Chicago and repeatedly told Schminke he had done this. Later an investigation disclosed the case had not been started.

Another charge concerned an appeal to the Supreme Court of Iowa, in which appellant secured $50 from Mr. Schminke to pay the cost of printing the abstract and brief. The abstract was printed at a cost of $25 and was filed but no brief was prepared and the appeal was later dismissed. Mr. Schminke testified that at various times he talked with appellant about this appeal and was always assured it would come up the next term of court or the term after that. He also testified he was never advised appellant was abandoning the appeal. Nor did appellant account for the unexpended balance of the money for printing.

We concur in the holding of the trial court that the Schminke matters were not sufficient in themselves to warrant disbarment. However, they are to be considered in connection with the other and more serious charges as indicative of the attitude and character of appellant.

Mrs. Dilley testified that shortly prior to the filing of the charges against appellant he had agreed to pay her 15 percent of his earnings to apply on the indebtedness and had paid a total of not quite $100 prior to the trial. She told the court she was opposed to the proceeding against him because it would deprive him of earning capacity to pay her. The loss suffered by Mrs. Dilley due to the wrongdoing of her lawyer is regrettable. Such matters are of deep concern to courts. But other people are equally entitled to protection. An attorney found to be morally unfit should not be given opportunity to prey upon the general public in the expectation or hope he will thereby be the better able to repay the losses of an earlier victim.

That one making an accusation against an attorney may be actuated by improper motives is not a bar to the prosecution of the charges. Nor is it necessary that charges be preferred or prosecuted by a person who claims injury from the alleged wrongdoings. Such proceedings are matters of public interest. The basis for judgment of the court is the proof or failure of proof of the charges and not the identity or motives of the accuser.

Certain members of the bench and bar testified for appellant as character witnesses. This evidence is entitled to respect and consideration and was doubtless so treated by the special trial court. The proof of the misconduct of appellant is clear and convincing. Instead of honestly advising and protecting his client he deceived and defrauded her and thus caused her financial ruin. The special court saw and heard the witnesses. Considerable weight should be accorded its findings and decision. We conclude the judgment is correct and should be affirmed.—Affirmed.

BLISS, C. J., and GARFIELD, HALE, SAGER, and WENNERSTRUM, JJ., concur.