# IN THE SUPREME COURT OF IOWA

No. 15–0024

Filed September 4, 2015
Amended September 10, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellee,

vs.

**FRANK SANTIAGO,**

Appellant.

On appeal from the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports that an attorney violated several rules of professional conduct and recommends a sixty-day suspension. **LICENSE SUSPENDED.**

Frank Santiago, Iowa City, pro se.

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellee.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Frank Santiago, charging him with violating Iowa disciplinary rules in connection with his representation of one client and his failure to follow trust account procedures. A division of the Grievance Commission of the Supreme Court of Iowa found he violated several rules by failing to deposit an advance fee into his trust account, maintain proper trust account records, account for withdrawals, and communicate his hourly rate. The commission recommended a sixty-day suspension, noting as an aggravating factor his failure to correct his bookkeeping practices after a 2011 audit. Santiago admits he violated the trust account rules but argues the sanction should be no more than a public reprimand. He argues the attorney who reported his misconduct did so out of spite, and his work for underserved, non-English speaking clientele merits greater consideration to mitigate the sanction. On our de novo review, we find Santiago violated the rules and suspend his license to practice law for thirty days.

### I. Background Facts and Proceedings.

Santiago has practiced law in Iowa since 1995. He is a solo practitioner with an office in Iowa City, concentrating in personal injury and criminal defense cases. He frequently represents non-English speaking Hispanic residents. He has no prior disciplinary record, but a 2011 audit of his practice found numerous shortcomings in his bookkeeping and violations of the trust account rules. The 2011 auditor assisted him in complying with record keeping requirements but he failed to take the lessons to heart. This case arose from his representation of one client and the resulting complaint, and the audit conducted in 2013–2014.

**A. The 2011 Audit.** The Client Security Commission audited Santiago's trust account in 2011. The auditor, Thomas McGarvey, examined Santiago's trust account statements from February to August of 2011. McGarvey testified at the 2014 grievance commission hearing that the rules require attorneys to perform a three-way reconciliation of the trust account on a monthly basis, and that Santiago had not performed the required reconciliation since 2007. Santiago admitted to McGarvey he had not been reconciling his account before the audit as required by the rules, but claimed he regularly performed his own review of the trust account. Santiago produced his bank statements for McGarvey, but had no check register or client ledger to cross-check the bank statements and lacked documentation for some transactions. The bank statements showed Santiago had made prohibited cash withdrawals from the trust account. McGarvey testified at the commission hearing that Santiago's personal review procedure was inadequate because it would not show when he failed to make trust account deposits. McGarvey also reported that Santiago made no written accountings to criminal clients when he withdrew funds from the trust account. Instead, Santiago simply withdrew retainer funds from the trust account after performing the work without notifying the clients or identifying the clients for each withdrawal.

McGarvey scheduled a follow-up appointment with Santiago in November of 2011. He found the records in better shape, which McGarvey attributed to the hiring of a new employee. However, Santiago still had not completed a check register, one of the elements necessary for a monthly reconciliation. McGarvey explained the need for individual client ledgers to use in reconciling the accounts each month. He showed Santiago how to complete the required reconciliations. McGarvey

testified he saw no evidence in his review that Santiago misappropriated client funds or acted dishonestly in his bookkeeping. No disciplinary complaint was brought against Santiago as a result of the 2011 audit.

**B. Moreno Representation.** In early January 2013, Santiago met with Joseph Moreno and agreed to represent him in criminal proceedings. Moreno faced charges for intimidation with a dangerous weapon, reckless use of a firearm, criminal mischief in the first degree, burglary in the first degree, carrying weapons, and operating a motor vehicle while intoxicated (OWI), first offense. According to court filings, Moreno, while severely intoxicated, pointed a loaded Glock 9 mm, semi-automatic handgun at his roommate. Moreno fired shots in their apartment, drove to Coral Ridge Mall, and crashed his Ford Explorer through the glass entrance doors at Scheels All Sports. He then ran to the upper level of the store, smashed the glass case containing ammunition, and passed out there before his arrest by a SWAT team. Moreno paid Santiago $100 for the initial one-hour conference and agreed to pay Santiago $5000 to seek an acceptable plea agreement. On January 3, Moreno gave Santiago $2500 in cash as a retainer. Santiago admittedly never placed that cash retainer in his trust account and, instead, put it in a drawer in his office. Santiago gave Moreno a handwritten receipt on the back of a business card but never discussed his hourly rate with Moreno or entered into a written fee agreement.

Santiago filed his appearance for Moreno in the criminal cases on January 4. According to Santiago, he also advised Moreno on several matters ancillary to the criminal charges, including a restraining order

preventing Moreno from entering his apartment,[1] Moreno's status with the National Guard, and Moreno's employment with Mercy Hospital. Santiago also discussed Moreno's case with the assistant county attorney, interviewed witnesses, and performed legal research, all without memorializing his work. By interviewing Moreno's roommate, Santiago learned that he claimed Moreno had forcibly marched him into the apartment at gunpoint and ordered him to lie down and count to a thousand, before firing shots into a wall. Santiago noted this information was not in the minutes of testimony and would support a charge of kidnapping, a forcible felony. Therefore, Santiago sought a quick plea agreement to forestall that additional felony charge.

Meanwhile, in early February, Moreno contacted Cedar Rapids attorney Maria Victoria Cole and met with her on February 25. On March 7, Moreno decided to dismiss Santiago and retain Cole to represent him. The record is silent about Moreno's reasons for substituting counsel. Cole called Santiago that day and left him a voicemail. According to Cole, she informed Santiago that Moreno had retained her and requested that Santiago provide Moreno a final accounting of his work and return any unused retainer funds. According to Santiago, Cole demanded the entire $2500 retainer in a threatening manner and did not claim to act as Moreno's attorney. Cole followed the voicemail with a letter to Santiago dated March 8 informing Santiago of her appearance as counsel for Moreno.

---

[1]Santiago's office was in the same building as Moreno's apartment, which Moreno was prohibited from visiting under the terms of his pretrial release. Santiago prepared a motion to amend the pretrial release conditions to allow Moreno to meet with Santiago in his office. Santiago also arranged with the landlord to permit Moreno to retrieve his belongings.

Santiago said he "knew the situation wasn't going to be good" as soon as he heard Cole's voice because he believed she carried a grudge from a case they litigated ten years earlier. In 2003, Cole was the assistant county attorney prosecuting Santiago's client, Raynaro Pirtle, on charges of possession of marijuana. *See State v. Pirtle*, No. 03–1655, 2005 WL 67524 (Iowa Ct. App. Jan. 13, 2005). Santiago and Cole's recollections differ. According to Santiago, at the conclusion of the trial, he asked the judge to inform the jurors that Santiago may contact them. After the judge left the courtroom, Santiago remembers Cole pointing at him and saying, "[I]f you bother those jurors, I will prosecute you, too." Santiago said he complained to Cole's boss, Johnson County Attorney Patrick White, about a credible threat of prosecution, and as a result of his complaint, Cole received a written reprimand for the incident. By contrast, Cole remembered the trial and a conversation with Santiago about harassing jurors, but she denied threatening to prosecute Santiago and denied any knowledge of a subsequent complaint or reprimand from White. White, called by Santiago to testify at the 2014 grievance commission hearing, lacked any recollection of reprimanding Cole, and no written reprimand of Cole appears in the record. Cole denied she carried any grudge against Santiago from the *Pirtle* case and maintained she had a cordial relationship with Santiago since that trial.

Santiago, at Cole's request, promptly provided her with CDs of police interviews, but he was much slower at providing the requested accounting. On March 20, Moreno called Santiago to get the accounting. Santiago told him he was tied up in a trial, and Moreno agreed the accounting could wait until after the trial. Santiago delivered his accounting to Moreno on April 10 with a letter stating he had reduced his usual hourly rate of $200 to $150 for Moreno and claimed 28.5 hours of

work for a total fee of $4275. Santiago offered to waive the $1775 balance he claimed Moreno owed him.

In response, Cole drafted a letter on Moreno's behalf disputing Santiago's hourly rate and time charges. Cole's letter, dated May 23, argued that Moreno reasonably thought Santiago's hourly rate was $100 based on his charge in that amount for the initial one-hour consultation. Cole also claimed Santiago inflated his bill by including irrelevant matters and excessive time charges. Specifically, Cole's letter alleged that Santiago should not have charged Moreno for discussions with the landlord that she viewed as unrelated to Moreno's criminal defense and that Santiago overcharged Moreno for drafting his appearance and withdrawal and sending investigative materials to Cole. Cole told Santiago to hold $1250 in his trust account as disputed funds until the matter could be resolved. Cole simultaneously forwarded a copy of her letter to the Board. Santiago responded to Cole's letter on May 28 disputing Cole's complaints but offering $500 to settle the matter. Santiago never placed Moreno's retainer or the disputed $1250 in his trust account.

**C. The 2013 Audit.** The Client Security Commission again audited Santiago in 2013. Auditor Gerald Murphy called Santiago on September 6, 2013. Murphy testified the audit was in response to Santiago's answer in his 2013 client security report admitting that he had not been reconciling his trust account. According to Murphy's notes of their initial phone call, Santiago made the following statements:

1. Records are not in order
2. Girl left him shortly after the last auditor was there
3. He doesn't take client money
4. Just isn't well organized

5. Small operator
6. Does everything himself
7. Takes in only small retainers

Murphy forwarded Santiago information on the trust account rules in chapter 45 and an article on compliance.

Murphy visited Santiago's office on October 14. Santiago admitted to Murphy that he had failed to place Moreno's retainer in the trust account but denied failing to deposit any other client's cash retainers in the account. Santiago also admitted he had not provided his criminal clients with notice or accounting when he withdrew funds from the trust account. Murphy noted Santiago had been making cash withdrawals[2] from the trust account and still had no check register, client ledger records, or monthly reconciliations. Murphy started a check register for him beginning in October of 2011 and completed two months of reconciliations, instructing Santiago to update his records up through September of 2013 within thirty days.

Murphy returned to Santiago's office on November 18 to review Santiago's reconstructed check register and reconciliation documents. Murphy reported that "[t]his review revealed that [Santiago] had numerous deposits and withdrawals that he could not associate with a specific client and that he did not create a separate sub-account ledger page for each client." Murphy prepared a spreadsheet to assist Santiago and discovered six clients with a negative balance and an overall account deficiency of $5257. As Murphy reported, "This is clear evidence that

---

[2]Murphy's final report documented cash withdrawals from Santiago's trust account in 2012 on March 26, May 18, July 19, September 13, September 27, October 15, and October 19. Murphy also documented cash withdrawals on May 10 and July 1 of 2013. Santiago admitted to another cash withdrawal on January 3 of 2014.

[Santiago] has not been keeping timely records and has not been providing the required notices and accountings to his clients." Murphy continued to work with Santiago to address the discrepancy. Santiago initially agreed to update Murphy by January 2, 2014, then promised to send information by January 22. On January 21, Santiago called Murphy to say he had a new bookkeeper who would need more time to analyze his records and update his spreadsheets. Santiago sent Murphy an updated client ledger spreadsheet on February 11, but it still showed a $1000 deficiency. On March 20, Santiago told Murphy he had discovered the problem and reduced the deposit amounts for two clients so the deficiency no longer existed. On March 24, Santiago asked Murphy if he could now withdraw earned funds from the trust account. Murphy responded that he could if he provided notice and accounting to the client and provided Murphy with a copy of the notice.

On March 31, Murphy emailed Santiago and asked to meet April 9 to continue the audit. Murphy requested documentation for the bank statements, check registers, and client ledgers between September 2013 and March 2014. Santiago responded a few minutes later, saying:

> [H]ere's my problem
>
> I stopped adding anything new into my client trust acct. until you gave me a clearance from the current review. I've been keeping records of new clients but not entered into the computer. I've ask[ed] Elizabeth to wait until I can get this first phase (this is what I am calling it) resolved. Then I was going to pick up from Sept 2013 to the present; which I postponed until this instant matter is taken care of.
>
> I can't even have you come over on the 9th, b/c I need to have Elizabeth and I now pick up from Sept. 2013 to the present . . . .

Santiago provided most of the information Murphy requested on April 21. Murphy noted Santiago still showed recent cash withdrawals

from the trust account and asked Santiago to provide him a copy of his fee agreement with his clients. Santiago responded:

> Ninety-five percent of my work is a flat fee arrangement. As of this writing I do not have a Contract for me and my clients. This has not been a problem. But I will prepare a Flat Fee arrangement for my clients. Further, I am improving on my notices and accountings of the clients' ledgers and letters which have more details.

Murphy noted in his report that as of April of 2014 he believed Santiago had achieved good trust account records as far as reconciliation with no outstanding deficiencies. Murphy testified at the hearing that he spent at least forty hours auditing Santiago and assisting him in bringing records up to date. He also testified Santiago was cooperative, honest, and forthright with him, and he saw no evidence of misappropriation.

**D. The Disciplinary Proceedings.** The Board received Cole's complaint on May 24, 2013, and wrote Santiago on June 13 with several inquiries. Santiago responded by letter dated July 9. He admitted his failure to deposit the Moreno retainer in his trust account, asserted he had earned more than the retainer, and denied he charged an unreasonable fee. The Board filed its complaint on May 29, 2014, alleging that Santiago violated Iowa Rules of Professional Conduct 32:1.5(a), 32:1.15, and 32:8.4(c), as well as Iowa Court Rules 45.1, 45.2(2), 45.2(3), and 45.7. On July 14, Santiago filed his answer, admitting that he failed to give notice and accounting to his criminal defense clients when making withdrawals and failed to deposit the Moreno retainer in his trust account. In the same answer, Santiago asserted he kept adequate trust records "proportional to his office," while admitting he kept no check register or client ledgers. On September 3, Santiago admitted in his answers to the Board's request for admissions that his reconciliation had not complied with the rules and that he

withdrew earned retainers from the trust account without the required notice and accounting. Santiago continued to deny that he overbilled Moreno or falsified his time representing Moreno.

The commission held an evidentiary hearing on October 27. On December 30, the commission released its "Findings of Fact, Conclusions of Law, and Recommendations." The commission found Santiago had violated rules 32:1.5 and 32:1.15 by representing his clients with no clear fee agreement and failing to put client funds in a trust account. The commission also found Santiago's failure to deposit funds in his trust account, provide contemporaneous accountings upon withdrawal, and keep adequate records violated client trust account rules 45.1, 45.2(3), 45.7(3), and 45.7(4). However, the commission found that the Board had not met its burden to prove Santiago had acted dishonestly in violation of rule 32:8.4(c) or charged Moreno an unreasonable fee. Santiago appealed the commission's findings and conclusions.

**II. Scope of Review.**

Our review of attorney disciplinary proceedings is de novo. Iowa Ct. R. 35.11(1). We give the commission's findings and recommendations "respectful consideration, but we are not bound by them." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 696 (Iowa 2014).

The Board must prove an attorney's misconduct by a convincing preponderance of the evidence. *Id.* at 697. "This burden requires a greater showing than the preponderance of the evidence standard, but is less demanding than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 418–19 (Iowa 2012). If we determine a violation has occurred, we may impose a sanction that is greater or lesser than the sanction recommended by the commission. *Ricklefs*, 844 N.W.2d at 697.

### III. Ethical Violations.

Santiago's answer to the Board's complaint admitted he failed to deposit the Moreno retainer in his trust account, admitted his cash withdrawals from his trust account, admitted his failure to provide notice and accounting when withdrawing funds from the trust account, and admitted his lack of a written fee agreement. "Factual matters admitted by an attorney in an answer are deemed established . . . ." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 532 (Iowa 2013); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Alexander*, 727 N.W.2d 120, 122 (Iowa 2007) ("Admissions may be relied upon to meet the evidentiary burden of the Board."). Nonetheless, we review de novo all of the allegations brought by the Board. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kelsen*, 855 N.W.2d 175, 181 (Iowa 2014) ("An attorney's stipulation as to a violation is not binding on us."). Upon our review, we find Santiago violated our trust account rules and failed to communicate his hourly rate, but the Board failed to prove he charged Moreno an unreasonable fee.

### A. Trust Account Violations.

1. *Rule 32:1.15 (Safekeeping Property).* Iowa Rule of Professional Conduct 32:1.15 states in relevant part:

> (a) A lawyer shall hold property of clients . . . separate from the lawyer's own property. Funds shall be kept in a separate account. . . . Complete records of such account funds and other property shall be kept by the lawyer . . . .
>
> . . . .
>
> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.

Iowa R. Prof'l Conduct 32:1.15. The commission determined that Santiago violated this rule. Santiago admittedly failed to place the

Moreno retainer in his trust account upon receipt and instead placed the cash in a drawer in his office. The failure to deposit cash retainers potentially facilitates income tax avoidance. It also results in the loss of interest income for IOLTA that funds legal aid and other programs that assist the indigent. *See* Iowa Ct. R. 44.1(1) (governing the interest on lawyers' trust account (IOLTA) program); *Comm. on Prof'l Ethics & Conduct v. Humphrey*, 377 N.W.2d 643, 651 & n.20 (Iowa 1985) (Reynoldson, C.J., concurring specially) (discussing the creation of the IOLTA program).

Santiago admitted he later deposited part of the retainer directly in his personal account and perhaps the rest in his business account. Auditor Murphy also testified that Santiago admitted to failing to deposit other cash retainers in the trust account. We find Santiago violated rule 32:1.15(c). We also find Santiago's record keeping deficient regarding his client ledgers and reconciliations. Both McGarvey and Murphy discovered Santiago failed to provide notice and accounting and failed to reconcile his trust account regularly. Santiago admitted his records were incomplete and out of date and acknowledged in his annual client security report that his accounts were not reconciled. We find Santiago's failure to keep proper records violated rule 32:1.15(a).[3]

2. *Rule 45.1 (Requirement for client trust account).* Rule 45.1 requires that "[f]unds a lawyer receives from clients or third persons for matters arising out of the practice of law in Iowa shall be deposited in one or more identifiable interest-bearing trust accounts located in Iowa."

---

[3]Santiago attempts to excuse his misconduct by contending he appropriately focused on representing Moreno in a fast-moving case and, as a sole practitioner, lacked time to deposit Moreno's retainer. Those arguments are unavailing. All lawyers must make the time to comply with trust account requirements.

Iowa Ct. R. 45.1. The commission determined that Santiago violated rule 45.1 by failing to deposit Moreno's retainer in his trust account. We agree.

3. *Rule 45.2(3) (Action required upon receiving funds, accounting, and records).* Rule 45.2(3) sets forth in detail the types of financial records lawyers must maintain for client trust accounts and billing. *See* Iowa Ct. R. 45.2(3). The commission determined that Santiago violated this rule by failing to keep adequate trust account records. The 2011 and 2013 audits conducted by McGarvey and Murphy demonstrate that Santiago failed to keep adequate check registers, client ledgers, and reconciliations. While Santiago claimed he personally reviewed his records regularly, he admitted his "reconciling is simple, granted not as required under the Rules." We find Santiago violated rule 45.2(3).

4. *Rule 45.7 (Advance fee and expense payments).* Rule 45.7(3) requires a lawyer to "deposit advance fee and expense payments from a client into the trust account and . . . withdraw such payments only as the fee is earned or the expense is incurred." *Id.* r. 45.7(3). For the reasons discussed above, we find Santiago's failure to deposit Moreno's retainer into his trust fund violated rule 45.7. Further, the rule states:

> *Notification upon withdrawal of fee or expense.* A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

*Id.* r. 45.7(4). "Contemporaneous billing requirements provide transparency to help ensure lawyers treat clients honestly and deal fairly with clients purchasing legal services. These record-keeping rules are essential to upholding public confidence in the justice system." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles,* 808 N.W.2d 431, 441 (Iowa

2012). The commission found Santiago violated this rule. Santiago admitted to both auditors and to the Board that he made withdrawals from his trust account without notifying clients or providing a timely accounting. We likewise find Santiago violated rule 45.7(4).

**B. Other Violations.**

1. *Rule 32:1.5 (Fees).* The Board alleged Santiago charged Moreno an unreasonable fee for the work he performed. "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses . . . ." Iowa R. Prof'l Conduct 32:1.5(a). Cole's letter to the Board disputed both the amount of time Santiago spent performing specific tasks on Moreno's behalf and the scope of Santiago's representation. However, Santiago testified he had performed substantial work in preparing Moreno's case and performed the work he did with Moreno's landlord, employer, and military contacts at Moreno's request.

The commission found the Board failed to meet its burden to show Santiago charged an unreasonable fee. The commission necessarily found Santiago's testimony credible as to his time charges. We give deference to the commission's credibility determinations because the commissioners hear live testimony and personally observe the demeanor of the respondent and the witnesses. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 659 (Iowa 2013). Further, the hourly rate Santiago charged Moreno is reasonable given Santiago's experience in handling criminal matters. On our de novo review, we decline to find Santiago charged Moreno an unreasonable fee.

However, Moreno's confusion about Santiago's hourly rate helps establish that Santiago violated rule 32:1.5(b), which provides:

> (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client.

Iowa R. Prof'l Conduct 32:1.5(b). Santiago admitted he had no written fee agreement with Moreno and that he does not use written fee agreements for the majority of his criminal defense work, saying, "This has not been a problem." Although rule 32:1.5(b) stops short of *requiring* a written fee agreement, the rule plainly requires that an attorney communicate to a client the scope of the representation and basis or rate of the fee. Cole testified she understood Santiago never discussed his hourly rate with Moreno. Santiago, present for Cole's testimony, offered no rebuttal on that point. If he had in fact orally informed Moreno of his hourly rate, we would expect him to so testify. He did not. A written fee agreement would have avoided the dispute that arose over Santiago's hourly rate. The commission found Santiago violated rule 32:1.5. We agree that Santiago failed to communicate in a timely fashion his hourly rate to Moreno and therefore violated rule 32:1.5(b).

2. *Rule 32:8.4 (Dishonesty).* Finally, the Board charged Santiago with violating rule 32:8.4(c), which prohibits a lawyer from "engag[ing] in conduct involving dishonesty, fraud, deceit, or misrepresentation." *Id.* r. 32:8.4(c). The Board argued that Santiago was motivated to exaggerate his time spent on Moreno's representation because he had never deposited the funds and needed the money. Santiago, while generally admitting his trust account violations, consistently denied he overcharged Moreno and insisted that he fully earned the retainer Moreno paid him. Both auditors testified Santiago was forthright and

honest in his communications with them.  The commission found that Santiago did not engage in dishonesty in his billing practices.  Again, we defer to the commission's assessment of Santiago's credibility.  *Clarity*, 838 N.W.2d at 659.  We find the Board failed to prove by a convincing preponderance of the evidence that Santiago violated rule 32:8.4(c).

## IV.  Sanction.

Having determined that Santiago violated rules 32:1.5(b), 32:1.15(a) and (c), 45.1, 45.2(3), and 45.7(3) and (4), we must decide the appropriate sanction.

> " 'Attorney disciplinary proceedings are not designed to punish, but rather to determine the fitness of an officer of [the] court to continue in that capacity, to insulate the courts and the public from those persons unfit to practice law, to protect the integrity of and the public confidence in our system of justice, and to deter other lawyers from engaging in similar acts or practices.' "

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 378 (Iowa 2005) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Vesole*, 400 N.W.2d 591, 593 (Iowa 1987)).  In determining the appropriate sanction,

> "we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003)).  "There is no standard sanction for particular types of misconduct."  *Clarity*, 838 N.W.2d at 660.  While prior cases may be instructive, " 'we determine the appropriate sanctions in light of the unique circumstances of the case before us.' "  *Id.* (quoting

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 182 (Iowa 2013)).

The commission recommends that we suspend Santiago's law license for at least sixty days. We give the commission's recommendation respectful consideration. *See Ricklefs*, 844 N.W.2d at 696. The Board recommends a suspension of ninety days to avoid automatic reinstatement, but acknowledges our applicable cases support a suspension of thirty to sixty days as well. Santiago asks for a private or public reprimand, arguing that his faulty bookkeeping caused no harm to clients and that the Board failed to prove misappropriation or more serious wrongdoing. We agree that no client harm was proven, which is a mitigating factor, but the poor state of his record keeping made it difficult for the auditors to trace funds to confirm lack of harm to clients. In *Kersenbrock*, we noted "the persistent failure to keep appropriate records has the effect of preventing effective review of Kersenbrock's accounting practices." 821 N.W.2d at 422. That observation applies to Santiago's practice.

The commission correctly identified as a mitigating factor that Santiago primarily represents clients in a non-English speaking, underserved Hispanic community. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Mendez*, 855 N.W.2d 156, 173 (Iowa 2014) (noting in mitigation that Mendez "serves a vulnerable population, many of whom do not speak English and are unfamiliar with the American legal system"). Santiago cooperated with the auditors, the commission, and the Board and admitted his trust account violations. This too is a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 202 (Iowa 2015) (stating "remorse and cooperation generally mitigate our sanction"); *Mendez*, 855 N.W.2d at 173 (stating

cooperation is generally considered a mitigating factor). Finally, Santiago has no prior disciplinary history, another mitigating factor. *See Kersenbrock*, 821 N.W.2d at 422.

Santiago argues Cole was motivated by petty revenge to file her complaint with the Board and that we should consider her motivation as a mitigating factor. His argument fails factually and legally. Factually, we do not find Cole bears a grudge from the events of the *Pirtle* trial ten years prior or that she filed the ethics complaint to settle a score with Santiago.

Legally, Cole's motivation for filing the ethics complaint is irrelevant to the sanction we impose. Santiago relies on a recent decision for the proposition that "personal issues" can be a mitigating factor. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 129 (Iowa 2013) ("Personal issues, such as depression, can be a mitigating factor, but they 'do not excuse a lawyer's misconduct.'" (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 703 (Iowa 2008))). In context, it is clear that *Dolezal* was referring to the respondent lawyer's own personal problems such as depression—not the alleged animus of the complainant. We have consistently held that the motivation of the accuser does not excuse the respondent attorney's misconduct or mitigate the sanction. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001) ("It is also unimportant that [the attorney]'s accusers may have been motivated to report his conduct by animosity or ill feelings."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Sunleaf*, 588 N.W.2d 126, 127 (Iowa 1999) ("The commission was also correct in refusing to give consideration to the motive of [the attorney]'s former secretary in alerting the board to [the attorney]'s misconduct."); *Comm. on Prof'l Ethics & Conduct v. Hall*, 463

N.W.2d 30, 36 (Iowa 1990) ("The commission also viewed the fact that the injured parties were not the complainants as a mitigating factor. We do not believe this situation mitigates the severity of respondent's conduct.").[4] We reiterate the principle we stated more than seventy years ago:

> That one making an accusation against an attorney may be actuated by improper motives is not a bar to the prosecution of the charges. Nor is it necessary that charges be preferred [sic] or prosecuted by a person who claims injury from the alleged wrongdoings. Such proceedings are matters of public interest. The basis for judgment of the court is the proof or failure of proof of the charges and not the identity or motives of the accuser.

*In re Boyer*, 231 Iowa 597, 600, 1 N.W.2d 707, 709 (1942).[5] Accordingly, the commission correctly determined that Cole's motivation was not a mitigating factor.

We turn next to the aggravating factors. The commission aptly observed:

> Santiago's failure to learn from his [2011] audit is an aggravating factor even though he did not receive any

---

[4]The complainant's motivation or animus may be relevant to the credibility of his or her testimony in determining whether misconduct occurred. *See, e.g.*, *In re Krull*, 860 N.W.2d 38, 44 n.2 (Iowa 2015) ("We skeptically view motions to disqualify counsel filed by a litigation adversary."); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 40 (Iowa 2014) ("[W]e approach with caution ethics complaints initiated by a litigation adversary."). In this case, Santiago himself admitted violating the trust account rules, and our findings as to those rule violations do not rest on Cole's credibility.

[5]Indeed, a duty to report violations of our disciplinary rules may exist regardless of the reporting attorney's motivations. *See* Iowa R. Prof'l Conduct 32:8.3(a) ("A lawyer who knows that another lawyer has committed a violation of the Iowa Rules of Professional Conduct shall inform the appropriate professional authority."); *see also* 16 Gregory C. Sisk & Mark S. Cady, *Iowa Practice Series: Lawyer and Judicial Ethics* § 12:3(c), at 1047 (2015 ed.) (discussing confidentiality as an exception to the duty to report). Cole testified that Moreno waived privilege for purposes of reporting Santiago. We express no opinion whether Cole had sufficient knowledge of Santiago's conduct to trigger a mandatory reporting obligation.

> suspension and had corrected those issues. In addition, the Division finds that the respondent was admitted to [the] practice of law in 1995 and has substantial experience which is an aggravating factor and that based upon the amount of time that he had be[en] serving as an attorney he should understand the rules regarding the Trust Accounts and the necessity of keeping good records in order to adequately protect the interest of his clients.

We agree that Santiago's experience and his failure to comply with trust account requirements despite the lessons he should have learned from his 2011 audit are aggravating factors.

> We have imposed a range of sanctions for trust account violations:

>> When dealing with client trust account violations, our sanctions have ranged from a public reprimand when the violation was relatively minor and isolated, to license suspension when the violation involved poor office management and neglect, to license revocation when the violation amounted to a misappropriation of client funds. Based upon the record in this case, we are not faced with a single incident, nor are we dealing with a case of misappropriation. Therefore, the suspension cases are most helpful in determining the ultimate sanction to impose in this case. Cases involving suspension for client trust account violations range from two months in less serious cases, to eighteen months in very severe cases when the violations combine with multiple instances of neglect and other ethical violations.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588–90 (Iowa 2011) (citations omitted) (imposing a sixty-day suspension). This case does not involve misappropriation or harm to a client. Nevertheless, suspension is warranted given Santiago's postaudit continuing disregard for the trust account rules scrupulously followed by other Iowa practitioners. A mere reprimand on this record would weaken the deterrence so important to motivating compliance with our rules that protect the public and maintain confidence in our legal system.

In *Ricklefs*, an attorney committed a series of additional trust account violations after a prior audit revealed the problems and he was

given the opportunity to resolve them. *Ricklefs*, 844 N.W.2d at 692–93. Like Santiago, Ricklefs failed to keep a ledger or check register and did not reconcile his trust account monthly. *Id.* Unlike Santiago, Ricklefs commingled client funds with his own and was dishonest on his client security commission form. *Id.* at 695. We found that Ricklefs warranted a stiffer sanction because he "was given a second chance after the [first] audit but did not mend his ways." *Id.* at 702. We imposed a three-month suspension. *Id.* In another recent disciplinary case, we imposed a six-month suspension for trust account violations based in part on the fact the attorney had been audited previously:

> The record overwhelmingly documents Morris's failure to comply with these clearly prescribed record-keeping and account-management requirements. His noncompliance persisted even after the auditors supplied him with an informational roadmap in May 2010.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 435, 437 (Iowa 2014). Santiago likewise received an "informational roadmap" from his 2011 audit, yet continued to flout our record keeping rules. Similarly, in *Iowa Supreme Court Attorney Disciplinary Board v. Powell*, we imposed a three-month disciplinary suspension for the wholesale mismanagement of a trust account resulting in a significant shortage that continued after an audit and required appointment of a trustee. 830 N.W.2d 355, 356, 360 (Iowa 2013). We expect lawyers to learn from their mistakes, and their failure to take to heart lessons learned through audits is an aggravating factor. *See id.* at 356, 359–60.

We have imposed suspensions in other cases involving a pattern of trust account violations. *See Eslick*, 859 N.W.2d at 203–04 (imposing a thirty-day suspension for "wholesale neglect of the obligation to maintain records" creating a "pattern of rule violations"); *Mendez*, 855 N.W.2d at

160, 175 (ordering California attorney to cease and desist practicing immigration law in Iowa for sixty days, based on trust account and other rule violations); *Kersenbrock*, 821 N.W.2d at 422 (imposing a thirty-day suspension for "systemic failure to maintain adequate accounting records"); *Boles*, 808 N.W.2d at 442–43 (imposing a thirty-day suspension for trust account and other rule violations, noting in mitigation cooperation, corrective measures, and exemplary record of volunteer pro bono and community service).

Considering all of the aggravating and mitigating factors, we conclude that Santiago's misconduct requires more than a reprimand. We determine that Santiago's license should be suspended indefinitely with no possibility of reinstatement for thirty days.

## V.  Disposition.

We suspend Santiago's license to practice law with no possibility of reinstatement for thirty days from the filing of this opinion.  This suspension shall apply to all facets of the practice of law.  *See* Iowa Ct. R. 35.13(3).  Santiago must comply with the notification requirements of Iowa Court Rule 35.23.  Costs are assessed against Santiago pursuant to Iowa Court Rule 35.27(1).  Unless the Board objects, Santiago shall be automatically reinstated after the thirty-day suspension period on the condition that all costs have been paid.  Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**

All justices concur except Hecht, J., who takes no part.