# IN THE SUPREME COURT OF IOWA

No. 15–1391

Filed November 20, 2015

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**ALEXANDRA M. NELISSEN,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission recommends suspension of an attorney for several violations of the rules of professional conduct and rules regarding client trust accounts. **LICENSE SUSPENDED.**

Charles L. Harrington, Wendell J. Harms, and Susan Wendel, Des Moines, for complainant.

Alexandra M. Nelissen, Des Moines, pro se.

**MANSFIELD, Justice.**

This matter comes to us on a report of a division of the Grievance Commission of the Supreme Court of Iowa. *See* Iowa Ct. R. 35.11(1). The Iowa Supreme Court Attorney Disciplinary Board charged attorney Alexandra M. Nelissen with violating several ethical rules. The commission held a hearing, found that some but not all the alleged violations had occurred, and recommended a thirty-day suspension. On our review, we essentially track the well-reasoned analysis of the commission. That is, we agree that trust account violations occurred, that Nelissen made misrepresentations on her 2014 client security questionnaire, and that Nelissen improperly increased her hourly rate without notice to her client. Like the commission, we reject the other alleged violations. We also agree with the commission's recommended sanction and, therefore, suspend Nelissen's license to practice law in Iowa for thirty days.

## I. Background Facts and Proceedings.

Nelissen has practiced law in Iowa since 2001. In 2011, Nelissen was a partner in the law firm of Nelissen & Juckette, P.C.

In August of that year, Nelissen was contacted by Linda Almburg. The Child Support Recovery Unit (CSRU) had notified Almburg that it intended to seek modification of the child support her ex-spouse was paying under a 2007 dissolution decree. In that decree, the parties had been awarded shared physical care of their two minor children, but Almburg's ex-husband had been ordered to pay $660 per month in child support to Almburg based on his substantially higher income. CSRU proposed a modification under which Almburg would pay approximately $350 per month in child support instead of receiving $660 per month. Almburg not only was concerned about this proposed change in child

support, she also wanted to look into altering the children's physical care arrangements.

At the initial client meeting, Nelissen and Almburg agreed upon a $3500 advance retainer. Almburg gave Nelissen a $2500 check at that time. Nelissen deposited the $2500 into the firm's client trust account. Almburg understood that Nelissen would bill for her services at a rate of $150 per hour. Although Nelissen prepared a written fee agreement, no such agreement was ever signed by Almburg.

On September 14, CSRU filed its request for a chapter 252H hearing to modify child support. *See* Iowa Code § 252H.8 (2011). A hearing was originally scheduled for January 4, 2012. This hearing date was continued several times—once because Nelissen was going to be out of town meeting her son who was returning from a Marine Corps deployment to Afghanistan and once because of Nelissen's medical condition. Additional continuances occurred because CSRU's counsel had a conflict and because Almburg's ex-spouse refused to provide discovery. The ex-spouse was sanctioned for this conduct and ordered to pay $250 toward Nelissen's attorney's fees. The 2007 child support order remained in effect pending the hearing.[1]

Almburg was unhappy with the delays in the proceeding. She frequently emailed and texted Nelissen, who often responded promptly to those communications.

On October 4, 2012, the hearing finally took place on CSRU's requested modification of child support. Nelissen represented Almburg at the hearing, and Almburg's ex-spouse also appeared through an

---

[1]As a further sanction for the ex-spouse's misconduct in discovery, the district court ordered that any modification of support would not be retroactive.

attorney. Almburg prevailed—the district court declined to modify child support. As the court explained,

> The Court finds that the Respondent's current "hardship" based on his financial condition is largely attributable to the Respondent's actions in pursuing underemployment activities while at the same time maintaining his unwavering desire to maintain a lifestyle inconsistent with his financial station.

Meanwhile, Nelissen had sent two itemized invoices to Almburg on behalf of the Nelissen & Juckette law firm. The invoices totaled $1097.62. The invoices appeared to indicate that Nelissen was seeking payment of $1097.62 in addition to the $2500 on deposit.[2] It is unclear to this day what happened to the $2500 retainer provided to the Nelissen & Juckette law firm.

In February 2012, Nelissen had split off from Jolie Juckette and gone into practice on her own. On June 12, Almburg delivered the balance of the original $3500 retainer (i.e., $1000) to Nelissen individually. The $1000 was not deposited into Nelissen's trust account. A week later, on June 19, Nelissen sent Almburg an invoice on behalf of her solo firm showing $2484.22 worth of work performed since February. The $1000 was treated as a credit, so the "current balance due and owing" was shown as $1484.22. Significantly, the hourly rate was now $200 rather than $150; Nelissen had not previously informed Almburg of this rate change. Even so, on July 23, Almburg paid Nelissen the $1484.22.

On November 6, following the successful outcome of the October child support modification hearing, Nelissen billed Almburg for an

---

[2]In fact, the second invoice, which was labeled a "pre-bill," included a late fee for nonpayment of the first invoice. This late fee, however, was later removed.

additional $4420 in fees and $.90 in costs covering the June through October time period. Giving credit for payment of the $250 court sanctions by Almburg's ex-spouse, the amount shown due was now $5655.12 despite the prior $1484.22 payment. The record does not indicate that Almburg paid any portion of this bill.

In July 2013, a special audit was performed on the client trust account at Nelissen's new solo firm. Nelissen provided the auditor with monthly bank statements, her general trust account ledger, copies of individual client ledger records, and copies of client billings. However, she did not provide monthly reconciliation statements or lists of client balances.

In June 2014, after the Board had received a complaint from Almburg, a further audit was conducted. At the audit, Nelissen produced monthly bank statements, the general trust ledger, and individual client ledger records. However, she still had no monthly reconciliations or lists of client balances tied to reconciled bank statement balances.

With respect to the Almburg representation in particular, Nelissen claimed the $2500 retainer had been used up while she was in legal partnership with Juckette. However, she had no documentation of this, nor any trust account documentation relating to Almburg. Nelissen promised to provide this documentation at a later date but never did so. Nelissen maintains that the Almburg billing file, which she received upon separating her practice from Juckette, was empty. Nelissen also failed to respond to a number of inquiries from the Board.

In her client security questionnaires filed in 2011, 2012, 2013, and 2014, Nelissen certified that reconciliations of trust account balances with bank statement balances and individual client ledger balances were

performed monthly. She also certified that books and records relating to client funds were preserved for at least six years after completion of the employment to which they related.

Following its investigation, the Board charged Nelissen with violating aspects of Iowa Rules of Professional Conduct 32:3.2 (expediting litigation), 32:1.4 (communication), 32:1.5 (fees), 32:1.15 (safekeeping property), 32:8.1 (disciplinary matters), and 32:8.4 (misconduct), as well as Iowa Court Rules 45.1, 45.2, and 45.7 relating to trust accounts. A full-day hearing was held before the commission on June 10, 2015. On August 12, the commission issued a concise yet thorough report of findings of fact, conclusions of law, and recommended sanction. The commission concluded that some but not all the alleged violations had occurred and recommended a thirty-day suspension of Nelissen's license to practice law.

### II. Standard of Review.

As we recently summarized,

> We review attorney disciplinary matters de novo. Attorney misconduct must be proven by a convincing preponderance of the evidence. We respectfully consider the commission's findings and recommendations, but are not bound by them. Upon a finding of misconduct, we may impose a greater or lesser sanction than recommended by the commission.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 190 (Iowa 2015) (citations omitted) (internal quotation marks omitted).

### III. Violations.

We begin our discussion with the alleged violations that were not proved by the Board. The Board charged that Nelissen violated Iowa Rule of Professional Conduct 32:3.2 by failing to make reasonable efforts to expedite litigation consistent with the interests of the client. It also alleged she violated rule 32:1.4 by failing to keep her client reasonably

informed and failing to respond to her client's reasonable requests for information. Iowa R. Prof'l Conduct 32:1.4. Finally, it alleged she violated rule 32:1.5(a) prohibiting the charging of an unreasonable fee. *Id.* r. 32:1.5(a).

We agree with the commission that these alleged violations were not established by a convincing preponderance of the evidence. Nelissen's reasons for seeking continuances were justified, and the continuances were brief and nonprejudicial. We also cannot conclude that Nelissen's communication with Almburg was so deficient as to amount to an ethical violation. Rather, we concur in the following assessment by the commission:

> The emails reflect a stressed client taking an active interest in her child support modification matter and asking pertinent questions about the proceedings. Nelissen was not always prompt in responding to [Almburg's] emails. Nevertheless, the record shows that Nelissen normally responded to emails from [Almburg] the same day or within one or two days.

Similarly, we agree with the commission that an improper $12.61 late charge on a "pre-bill" that was subsequently removed does not constitute a violation of rule 32:1.5(a).

However, we uphold the violations that the commission found. Rule 32:1.5(b) requires that "[a]ny changes in the basis or rate of the fee or expenses shall also be communicated to the client." *Id.* r. 32:1.5(b). In February 2012, Nelissen increased her hourly rate by 33⅓% to $200 per hour. Yet she did not inform her client of this change, other than by using the new rate in her billing. This oversight violated rule 32:1.5(b).

More serious are the trust account violations. The commission found, as do we, that Nelissen breached various ethical rules relating to trust accounts by mishandling funds she received from Almburg.

Nelissen never communicated to Almburg that withdrawals were being made from the initial $2500 retainer. *See* Iowa Ct. R. 45.7(4) (requiring contemporaneous or advance notification with a complete accounting); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 180 (Iowa 2015). She also failed to deposit the $1000 balance of the retainer in her client trust account. *See* Iowa R. Prof'l Conduct 32:1.15(a), (c) (requiring maintenance of client funds in a separate account and their withdrawal only as fees are earned or expenses incurred); Iowa Ct. Rs. 45.1, .7(3) (imposing similar but more detailed requirements); *Santiago*, 869 N.W.2d at 180. Additionally, although the commission did not make a specific finding on this point, we find by a convincing preponderance of the evidence that withdrawals were made from the $2500 retainer before the funds were actually earned.[3]

Furthermore, Nelissen violated rule 45.2(3) by failing to retain for six years billing and trust account records relating to the Almburg representation and failing to make reasonable arrangements to retain those records when her partnership with Juckette dissolved. *See* Iowa Ct. R. 45.2(3)(*a*), (*d*) (requiring retention of billing trust account records for six years and requiring that when a law firm dissolves, "the partners shall make reasonable arrangements for the maintenance of the records

---

[3]We do not agree with the commission that Nelissen's failure to deposit the $1484.22 in her client trust account was an additional violation. This was a payment on a bill for services previously rendered. Although Nelissen later accepted that Almburg was entitled to a credit for the unaccounted $2500 retainer, a contemporaneous memo confirms that neither Nelissen nor Almburg viewed the $1484.22 as an advance payment at the time.

We share the commission's view that "there is no evidence that Nelissen's actions amount to conversion or misappropriation of any funds in her client trust account." As stated by the commission, "Nelissen's violations of the trust account rules appear to stem from sloppy record keeping and a disorganized separation of her legal practice with Juckette."

specified in this rule"). Although it is not clear exactly what happened to those records for the time period before the two law partners went their separate ways, it is apparent that Nelissen made insufficient arrangements to assure their preservation. Nelissen also committed an ethical violation by not performing monthly reconciliations of her bank statements with client trust account records. *See id.* r. 45.2(3)(*a*)(9) (requiring attorneys to maintain and retain monthly reconciliations); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 201 (Iowa 2015).

Like the commission, we also find Nelissen violated rule 32:8.4(c) by misrepresenting on her 2014 client security report that she was performing monthly reconciliations of her trust account balances with bank statements. *See* Iowa R. Prof'l Conduct 32:8.4(c). While the record may be somewhat inconclusive for earlier years, it is clear that after she went into practice on her own Nelissen knew her firm was not doing monthly reconciliations, even though she claimed it was. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 421 (Iowa 2012) (finding an attorney engaged in conduct involving misrepresentation by misstating the status of her trust account practices in her annual client security questionnaires).

Additionally, we join the commission in determining that Nelissen violated rule 32:8.1(b) by ignoring requests of the Board for information. Between January and May 2014, the Board sent a series of letters to Nelissen, as to which it received no response. *See* Iowa R. Prof'l Conduct 32:8.1(b) (making it an ethical violation to "knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lemanski*, 841 N.W.2d 131, 133 (Iowa 2013). We can infer from the repetition of the

behavior that Nelissen "knowingly" failed to respond. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 604–05 (Iowa 2011).

## IV. Sanctions.

Regarding sanctions, we are guided by the following principles:

> There is no standard sanction for particular types of misconduct. In the imposition of sanctions, we consider the violations at issue, the need to deter future violations, the protection of the public, the reputation of the bar, the attorney's fitness to practice law, and aggravating and mitigating circumstances.
>
> . . . .
>
> When determining what sanctions to impose, we consider those imposed in similar cases while remaining aware of the different circumstances in each case.

*Said*, 869 N.W.2d at 193 (citations omitted) (internal quotation marks omitted).

This case mainly involves trust account violations. "Our sanctions for trust account violations have ranged from a public reprimand to license revocation." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 550 (Iowa 2015). There is no indication that Nelissen misappropriated or converted client funds without a colorable future claim to those funds—a situation that would warrant revocation. *See id.* at 552. At the other end of the spectrum, we have imposed a public reprimand for "isolated and minor violations," or "minor trust account violations [that] are the result of sloppiness or lack of oversight." *Id.* at 550. Considering the specifics of this case, our precedents, and the other factors enumerated above, we have decided to suspend Nelissen's license to practice law in Iowa for thirty days as recommended by the commission.

A reprimand would not be appropriate here for several reasons, including Nelissen's record of past discipline. In 2012, Nelissen received a public reprimand primarily for trust account violations that occurred in 2010 and 2011.[4] This is a significant aggravating factor. *See Eslick*, 859 N.W.2d at 203 (noting that an attorney's "previous public reprimand makes a suspension [for trust account violations] appropriate in this case"). Additionally, during the 2013 audit, the auditor reminded Nelissen she needed to perform monthly reconciliations, yet this problem remained at the time of the 2014 audit. *Santiago*, 869 N.W.2d at 183 (finding "failure to learn" from a prior audit to be an aggravating factor); *see also Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 700 (Iowa 2014) ("Ricklefs knew what he needed to do after the 2008 audit but failed to do it."). Further, Nelissen made a misrepresentation on her client security questionnaire—conduct that we have said "could potentially justify a more severe sanction" than would otherwise be imposed. *Ricklefs*, 844 N.W.2d at 702. For these reasons, another reprimand would not serve the goals of the attorney discipline process. *See Santiago*, 869 N.W.2d at 184 ("A mere reprimand on this record would weaken the deterrence so important to motivating compliance with our rules that protect the public and maintain confidence in our legal system.").

The commission treated Nelissen's personal health issues as a mitigating factor. *See Eslick*, 859 N.W.2d at 202. However, Nelissen opted not to testify at the hearing so we have very limited information on those issues and no basis to tie them to her trust account violations. *Cf.*

---

[4]Additionally, Nelissen's license was temporarily suspended in 2013 for failure to pay annual fees, and she received a public reprimand in 2014 for neglect.

*id.* at 202 (discussing the attorney's testimony about her personal illness and what she was doing to address it). We do find that lack of client harm is a mitigating circumstance. *See Ricklefs*, 844 N.W.2d at 700.

This case does not involve a pervasive failure to follow trust account rules. *Cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 436, 437 (Iowa 2014) (imposing an indefinite suspension of at least six months on an attorney whose "record-keeping and management deficits were severe and . . . persisted over a long period of time even after the Client Security Commission intervened with an audit" and who had prior suspensions); *Ricklefs*, 844 N.W.2d at 700, 702 (Iowa 2014) (imposing an indefinite suspension of at least three months on an attorney who had "pervasive trust account violations," including using his trust account "as a conduit for personal funds," when the situation had continued for several years despite a prior audit); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359–60 (Iowa 2013) (imposing an indefinite suspension of at least three months on an attorney who was guilty of "years of utter disregard . . . for the trust fund rules and practices," while taking into account the attorney's interim suspension for seven months for the same conduct); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 589–90 (Iowa 2011) (imposing a sixty-day suspension on an attorney who repeatedly failed to account for client funds and whose "conduct over the last ten years has now developed into a pattern of violating the [ethical and trust account rules]").

To the contrary, the record indicates that Nelissen generally had a functioning client trust account, kept a client trust account ledger, and maintained individual client ledger records. She also competently represented her client in the matter that is the subject of this complaint.

Nelissen did, however, consistently fail to perform monthly reconciliations. Additionally, with respect to Almburg, Nelissen failed to take reasonable steps to preserve records, paid herself out of the trust account prematurely and without giving proper notice, and failed to deposit a portion of the retainer in the trust account.

Although no two cases are identical, we agree with the commission that *Kersenbrock* is a relevant precedent. There we imposed a thirty-day suspension on an attorney who had committed similar trust account violations and made misrepresentations on her client security questionnaire. *Kersenbrock*, 821 N.W.2d at 419, 421, 422. True, the trust account violations in *Kersenbrock* were "systematic" and we indicated "[t]he cumulative impact of all violations is an important consideration." *Id.* at 422. On the other hand, unlike Nelissen, that attorney had no prior disciplinary history. *Id.*

Also of precedential significance is our decision in *Eslick*. In that case, we suspended for thirty days the license of an attorney whose trust account was "out of whack" for months. *Eslick*, 859 N.W.2d at 203, 204. Despite the serious nature of the trust account violations, the attorney had a limited record of prior discipline (consisting of a public reprimand for something other than trust account violations), she had not made misrepresentations on her client security reports, and she was receiving treatment for an illness that had affected her practice. *Id.* at 202–03.

Another somewhat analogous precedent is *Santiago*.[5] *See* 869 N.W.2d at 181. That case involved an attorney who violated trust account rules by not depositing cash retainers in the trust account, not

---

[5]This case was not cited by the commission because it was decided after the commission filed its report and recommendation.

providing notice and accounting, and not reconciling his trust account regularly. *Id.* at 179. No client harm was proven, but the attorney had been notified of deficiencies in a prior audit. We concluded a "suspension is warranted given [the attorney]'s postaudit continuing disregard for the trust account rules scrupulously followed by other Iowa practitioners." *Id.* at 174, 182, 184.

## V. Disposition.

We suspend Nelissen's license to practice law with no possibility of reinstatement for thirty days from the filing of this opinion. This suspension shall apply to all facets of the practice of law. *See* Iowa Ct. R. 35.13(3). Nelissen must comply with the notification requirements of Iowa Court Rule 35.23. Costs are assessed against Nelissen pursuant to Iowa Court Rule 35.27(1). Unless the Board objects, Nelissen shall be automatically reinstated after the thirty-day suspension period on condition that all costs have been paid. *See id.* r. 35.13(2).

**LICENSE SUSPENDED.**