**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**
Complainant,

v.

**Kenneth J. SMITH, Respondent.**

No. 17-1110

Supreme Court of Iowa.

Filed November 17, 2017

Tara M. van Brederode and Patrick W. O'Bryan of O'Bryan Law Firm, Des Moines, for complainant.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for respondent.

MANSFIELD, Justice.

This attorney disciplinary proceeding requires us once more to address proper trust account procedures. The attorney maintained individual client trust account records on handwritten ledger cards but failed to regularly reconcile those records with bank records. One of his answers to the annual questionnaire propounded by

the Client Security Commission was therefore inaccurate, although not intentionally so. During a routine audit, a substantial trust account deficit was uncovered in one client account. The attorney immediately wrote a check to cover the deficit, and no client suffered harm. The attorney forthrightly accepted responsibility and has updated his trust account practices.

The Iowa Supreme Court Attorney Disciplinary Board (the Board) charged the attorney with violating Iowa Court Rule 45.2(3) and Iowa Rule of Professional Conduct 32:8.4(c). The Iowa Supreme Court Grievance Commission found a violation only of rule 45.2(3) regarding the failure to reconcile the accounts. The commission recommended a public reprimand.

Upon our review, we agree with the commission that only rule 45.2(3) was violated and that a public reprimand is appropriate.

## I. Background Facts and Proceedings.

Kenneth Smith was admitted to the Iowa bar in 1973 and has practiced in a law firm in Newton since his admission. Smith is now a name partner in that firm. He is a seasoned trial attorney and does a significant amount of transactional legal work.

Historically, the firm kept track of its individual client trust balances using handwritten ledger cards. At some point, it supplemented the system with an accounting software program. Smith was responsible for maintaining the firm's client trust account. He also enlisted the services of an accounting firm located within the law firm's building. To reconcile the client trust account, Smith stated his general practice was to look at ledger cards only for individual accounts he believed had some activity in the past month.

In June 2013, a representative of the Client Security Commission performed a regular audit of the client trust account of Smith's law firm. The auditor found what appeared to be a negative balance in the trust account of $47,365.95 as of August 15, 2012. Through further investigation, the auditor identified five specific client accounts with issues: Agro-Ray, L.L.C.; Smith Farms; Smith-Kriegel; Smith-Klaassen; and an "unknown" account consisting of a single $11,000 entry.[1] The main contributor to the August 15 deficit was a negative balance of approximately $46,000 in the Smith Farms account.

The ledger cards were confusing. Some of the transactions on the cards were not listed in chronological order. There were also concerns about possible inaccuracies. Smith's outside bookkeeper therefore reconstructed the ledgers to clarify the transactions and the balances. After the ledger cards were reconstructed, the auditor concluded there had been a negative balance of nearly $50,000 in the client trust account as of April 30, 2013. This deficit was the result of a negative balance of $48,700 in the Agro-Ray account that had not been immediately apparent from the original Agro-Ray ledger card.

When Smith was informed by the auditor of the deficit, he immediately deposited a check for $50,000 in the trust account. Smith's accountant continued to verify and reconstruct the ledgers. After all the individual client accounts had been verified and restated approximately two months later, the auditor determined there was an additional deficiency of $813.11. Smith

---

1. This "unknown" transaction was later reclassified as an $11,000 credit on the Agro-Ray account.

wrote a second check to cover this amount, plus a $100 cushion.

Agro-Ray is an entity owned and funded by Smith and two others. It purchases farmland in Ukraine. The account had two problematic transfers that each caused deficits at different times. The first was a $65,000 transfer in February 2012, simply labeled "wire transfer—Ken." At the time of that transfer, the account showed only $600 available. In March 2012, when the account once again had a positive balance, another transaction labeled "transfer to Agro-Ray" produced a $48,450 deficit. As noted, the final shortfall at the time of the audit was $48,700.

The other three accounts that the auditor initially identified also were affiliated with Smith in various ways. Smith-Kriegel and Smith-Klaassen were used for the sale of assets out of the estate of Smith's father. Smith and his sister were the beneficiaries of that estate and the persons entitled to receive those proceeds.[2] Smith Farms functioned as the other side of the same coin: an account established so Smith and his sister could pay estate-related expenses.

The additional $813.11 deficit that was discovered later consisted of discrepancies in six other client accounts. Smith was not affiliated with those clients.

When the first stage of the audit had been completed that uncovered the $50,000 deficit, the auditor wrote in an email,

> I reported to you in June that this IOLTA may have a deficiency of approximately $50,000.00 and that the attorney immediately deposited this amount back into the Trust account. The deficiency centers around real estate transactions that he is a part of. At or near the time the deficiency originated, the attorney may have had sufficient funds of his own to cover the deficiency that were reflected on other sub-account ledger cards—possibly in error. He will probably be entitled to withdraw approximately $50,000.000 after we finalize the audit.

Smith eventually did withdraw the $50,000 he had previously deposited.

At the subsequent hearing, Smith and the auditor agreed there was a positive balance of nearly $21,000 in the Smith-Kriegel account at the same time there was a $48,700 shortfall in Agro-Ray. Further, the record indicates that Smith became entitled to $24,000 from another account called El Sombrero. However, the latter funds did not come into the client trust account until December of 2012, approximately nine months after the Agro-Ray shortfall first appeared.

No client ever complained about a shortfall, and apparently the client trust account was never overdrawn. Despite the irregularities noted above, the auditor stated in an August 2014 memo to the assistant director for boards and commissions that he did "not have any concerns that the firm [was] not properly protecting the client funds."

From 2010 to 2013, Smith reported on the Iowa annual client security commission questionnaire that he was making monthly reconciliations of his trust account per court rules and the procedures of the client security commission.[3] Smith now ac-

---

2. Smith testified that on February 1, 2012, he executed a note to his sister for her share of Smith-Kriegel, because she wanted him to invest her funds and pay her six percent.

3. Question 14: "Are reconciliations of your trust account balances with bank statement balances and individual client ledger balances performed monthly?"

Question 15: "Do you or at least one lawyer of your law firm review monthly trust account reconciliations prepared by nonlawyer staff?"

Smith answered "yes" to both questions on each report from 2010 to 2013.

knowledges that he did not reconcile individual client ledger balances monthly. He testified that he only looked at individual client ledger cards when there had been activity that month. The auditor ultimately concluded that Smith had not conducted a proper reconciliation of the client balances to the check register balances since December of 2010.

In 2014, shortly after the audit was finished and Smith became aware that his reconciliation practices were inadequate, he implemented a new system of accounting and reconciliation. The system no longer relies on handwritten ledger cards and balances every individual client account every month.

On November 9, 2016, the Board filed a complaint against Smith alleging violations of Iowa Court Rules 45.2, 45.2(3), and 45.2(3)(a)(9) and Iowa Rule of Professional Conduct 32:1.15. On December 14, 2016, the Board filed an amended complaint, which alleged an additional violation of Iowa Rule of Professional Conduct 32:8.4(c), as it "more accurately reflect[ed] the sequence of events giving rise to the Complaint."

The commission held a hearing on April 3, 2017. Smith fully accepted responsibility for his failure to comply with the accounting rules but contended his answers to the questionnaire were never intended to mislead or deceive the Client Security Commission, as he believed at the time his accounting and balancing methods were compliant.[4] He maintained that he did not realize his methods were incorrect until after the audit, when he immediately developed a proper accounting system.

Smith also testified that he has been active in the Iowa bar and the Newton community since his admission to practice

in 1973. He has been involved in charitable activities, setting up college scholarships for Newton graduates, giving heavily to his church and other nonprofit organizations, hosting numerous foster children and foreign exchange students, and purchasing land in the Ukraine to help families reestablish themselves after the transition from the Soviet Union. Smith estimated he dedicated at least a thousand hours to pro bono work in 2016. Smith has no prior record of discipline.

Following the hearing, the commission found that Smith's conduct violated Iowa Court Rule 45.2(3) but did not violate Iowa Rule of Professional Conduct 32:8.4(c). In considering an appropriate sanction, the commission recognized Smith's otherwise unblemished record, the fact that no clients were actually harmed by Smith's failure to reconcile the accounts properly, Smith's full cooperation during the proceedings, and his significant record of pro bono and charitable activity throughout his career. However, the commission also acknowledged Smith's extensive legal experience as an aggravating circumstance. The commission recommended a public reprimand.

## II. Standard of Review.

 We review attorney disciplinary matters de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Willey*, 889 N.W.2d 647, 653 (Iowa 2017); *see* Iowa Ct. R. 36.21(1). "The Board must prove ethical violations by a convincing preponderance of the evidence." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Vandel*, 889 N.W.2d 659, 662 (Iowa 2017). This standard is greater than in a typical civil case but less than proof beyond a reasonable doubt. *Id.* "While we respectfully consider the com-

---

4. Smith contended throughout the hearing that he reconciled his accounts but did not realize that an additional "tier" of individual client account reconciliation was necessary.

mission's findings and recommendations, they are not binding on us." *Id.*

### III. Analysis.

**A. Rule Violations.** We agree with the commission's determination that Smith violated Iowa Court Rule .45.2(3) when he did not reconcile the trust account for each client every month. *See also* Iowa R. Prof'l Conduct 32:1.15(f) (stating that client trust accounts are governed by chapter 45 of the Iowa Court Rules).

Rule 45.2(3)(*a*)(9) provides that a lawyer must maintain financial records of client trust accounts and keep "[c]opies of monthly trial balances and monthly reconciliations of the client trust accounts maintained by the lawyer." Iowa Ct. R. 45.2(3)(*a*)(9). It is clear that Smith did not reconcile the trust account each month on a client-by-client basis. This is admitted in Smith's answer, conceded in his testimony, and demonstrated by the shortfall that was established after a proper reconstruction of the client ledgers took place. Therefore, we find Smith violated rule 45.2(3)(*a*)(9).

The Board also alleged that Smith violated Iowa Rule of Professional Conduct 32:8.4(c) when he inaccurately reported on the client security commission questionnaires from 2010 to 2013 that "reconciliations of [his] trust account balances with bank statement balances and individual client ledger balances [were] performed monthly." Rule 32:8.4(c) provides that "[i]t is professional misconduct for a lawyer to ... engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. Prof'l Conduct 32:8.4(c). We have previously found a violation of this rule when an attorney responded on the questionnaire that he or she was performing monthly reconciliations when in fact he or she was not. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 700 (Iowa 2015) (finding an attorney violated rule 34:8.4(c) when she "knew her firm was not doing monthly reconciliations, even though she claimed it was").

However, "[n]egligent behavior alone does not violate [rule 32:8.4(c)]. ..." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 212 (Iowa 2016). The wrinkle here is that Smith testified he performed an *overall* reconciliation and did not realize until the 2013 audit that he needed to perform *client-by-client* reconciliations. As he put it, "[U]ntil I got into this problem here, I would have considered reconciliation, the monthly reconciliations, if I did reconciliations with the amount in the account and the amount I needed to cover the clients." The commission, which had the benefit of seeing and hearing from Smith in person, accepted this explanation, while observing that it "shows a high level of negligence."

We agree with the commission that this alleged violation was not established by a convincing preponderance of the evidence. We defer to the commission's assessment of Smith's credibility. *See, e.g.*, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 181 (Iowa 2015) (deferring to the commission's view of an attorney's credibility in determining the attorney did not violate rule 32:8.4(c)). We do note that the questionnaire itself refers to "individual client ledger balances," although perhaps the relevant question could be worded more precisely.

**B. Sanction.** We now must decide the proper sanction for Smith's violation. There are no standard sanctions for particular violations, but we take guidance from prior cases. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 901 N.W.2d 513, 516 (Iowa 2017) (noting the relevance of prior cases because of our goal of "achiev[ing] consistency in the dis-

cipline of Iowa lawyers who violate our rules of professional conduct" (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Khowassah*, 890 N.W.2d 647, 651 (Iowa 2017))). However, we consider heavily the "particular circumstances of each case." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lynch*, 901 N.W.2d 501, 509 (Iowa 2017) (quoting *Willey*, 889 N.W.2d at 657).

■ To determine the appropriate sanction,

> we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Crotty*, 891 N.W.2d 455, 466 (Iowa 2017) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009)).

"When an attorney's minor trust account violations are the result of sloppiness or lack of oversight, we have levied a public reprimand rather than a suspension." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Smith*, 885 N.W.2d 185, 195 (Iowa 2016) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 550 (Iowa 2015) (listing cases)).

Meanwhile, we have imposed suspensions for serious trust account violations. *See id.* at 197 (imposing a sixty-day suspension on an attorney who failed to keep adequate records, commingled personal and trust account funds, withdrew fees before they were earned, and committed other violations over a time period spanning years); *Lubinus*, 869 N.W.2d at 549–50, 554 (levying a thirty-day suspension on an attorney who failed to deposit advance fees into the trust account, prematurely withdrew fees, failed to keep adequate rec-

ords, neglected to perform monthly reconciliations, and did not notify clients of withdrawals from the account); *Santiago*, 869 N.W.2d at 179, 185 (imposing a thirty-day suspension on an attorney who did not keep adequate records or reconcile his trust account regularly, failed to deposit a retainer into the trust account, and did not notify clients of withdrawals); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 203 (Iowa 2015) (suspending an attorney for thirty days who failed to deposit client funds in the trust account, failed to notify clients when she withdrew funds from the account, kept inadequate records, and generally "created a pattern of rule violations"); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 698, 702 (Iowa 2014) (placing a three-month suspension on an attorney who failed to maintain a check register or client ledgers, did not regularly perform reconciliations, did not retain bank statements, commingled funds, made knowingly false statements on the questionnaire, and failed to comply with the trust account rules even after being instructed to do so in a prior audit); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 419–21 (Iowa 2012) (imposing a thirty-day suspension on an attorney who did not deposit all retainers in her trust account, did not perform any reconciliations, made false statements on the annual questionnaire, and had recordkeeping so deficient that it was impossible to perform reconciliations after the fact).

This case clearly does not rise to the level of the aforementioned cases. Smith maintained a proper trust account, kept bank records for that account, maintained individual client trust account ledgers, and performed some monthly reconciliations.

Additionally, significant mitigating factors are present here. Smith has never before been the subject of professional discipline. *See Kersenbrock*, 821 N.W.2d at

422. He cooperated fully with the auditor, the commission, and the Board. *See Santiago*, 869 N.W.2d at 182. He admitted his violation. *See id.* No client suffered financial harm. *See Nelissen*, 871 N.W.2d at 701. Lastly, Smith has made considerable charitable contributions to the community and the legal profession. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 227 (Iowa 2015). The only aggravating factor here is Smith's lengthy experience as an attorney. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 436 (Iowa 2014).

Smith argues that he should be given only a private admonition. He urges that "there was *never* a shortage of $47,365.95 in the client trust account." Rather, in his view, there were simply inadvertent "labeling" errors whereby transactions were posted to the incorrect client ledger. According to Smith, it was all a wash because the funds belonged to him personally either way and any shortfall in one ledger was balanced out by a surplus from another ledger.

We are not persuaded. As the auditor testified, and as the postreconstruction ledgers indicate, in March 2012 the Agro-Ray client trust account had a deficit of $48,700. The only meaningful surplus at that time in a Smith-related account was the approximately $21,000 in Smith-Kriegel. The $24,000 in El Sombrero funds did not arrive until December. As the auditor put it, "[T]hat El Sombrero did not come into the trust account until December of 2012. So back in March of '12 when the deficiency first originated, that money was not available to withdraw." Although no client was actually harmed, the potential

for harm existed. As the auditor explained, if all clients had simultaneously asked for their funds in the trust account, Smith "did not have enough funds to cover all liabilities starting [in] March of 2012." Also, Smith could have figured out some individual client trust accounts were short on funds *without* performing individual reconciliations: the original, uncorrected ledgers showed that.

The record indicates that Smith is a gifted attorney with a highly successful practice. However, in 2013 he was operating a bookkeeping system that was not up to the needs of that practice or the requirements of rule 45.[5] The auditor testified that he had to spend approximately forty hours on the 2013 audit of Smith's law firm. The bill for that time falls on all practicing lawyers. Even the amended individual ledger cards, which were prepared by Smith and his bookkeeper in response to the 2013 audit, still have some entries out of chronological order and remain difficult to follow.

In light of all the foregoing considerations, we conclude a public reprimand is appropriate.

## IV. Conclusion.

For the reasons stated above, we impose a public reprimand on Smith. The costs of this action shall be taxed to Smith as provided in rule 36.24(1). *See* Iowa Ct. R. 36.24(1).

**ATTORNEY REPRIMANDED.**

---

5. Smith commented on the apparent lack of CLE resources available on this topic and suggested he would have been in compliance had they been available. However, an online search indicates there were materials on this topic available prior to 2013. *See, e.g.*, Paul H. Wieck II, *Lawyer Trust Accounts in Iowa*, Polk County Bar Ass'n (Oct. 2011), https://pcbaonline.org/wp-content/uploads/2011/04/22Trinity-Braun-Trust-Account-Outline.pdf [https://web.archive.org/web/20171106221700/https://pcbaonline.org/wp-content/uploads/2011/04/22Trinity-Braun-Trust-Account-Outline.pdf].