# IN THE SUPREME COURT OF IOWA

No. 23–1833

Submitted April 10, 2024—Filed May 3, 2024

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**TA-YU YANG,**

Respondent.

---

On review of the report of the Iowa Supreme Court Grievance Commission.

In an attorney disciplinary action, the grievance commission recommends a sixty-day suspension for violations of trust account rules.

**LICENSE SUSPENDED.**

Mansfield, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Oxley, and McDermott, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part, in which May, J., joined.

Tara van Brederode, Allison A. Schmidt, and Sarah C. Tupper, Des Moines, for complainant.

Ta-Yu Yang, Des Moines, respondent pro se.

**MANSFIELD, Justice.**

### I. Introduction.

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against an experienced immigration attorney for failing to follow proper trust account practices. The attorney did not timely answer the complaint, so the Iowa Supreme Court Grievance Commission deemed the factual allegations admitted. The commission held a hearing at which the attorney testified, found that a number of disciplinary rule violations had occurred, and recommended a sixty-day suspension.

Upon our review, we determine most of the alleged ethical violations took place. With regard to sanction, we give particular consideration to the attorney's failure to rectify his trust account problems after the same problems had arisen in 2014, his seeming resistance to following proper trust account practices, his years of dedicated service to an underserved community, and his intention to retire. Ultimately, we suspend the attorney's license to practice law in Iowa for thirty days.

### II. Background Facts and Proceedings.

After attending law school when he was already in his forties, Ta-Yu Yang became admitted to practice law in Iowa in 1993. He opened his own firm in 1994 and has continued to practice there. At the time of these proceedings, Yang worked primarily in immigration law. In the past, Yang has taught a law school class on immigration law.

Yang's immigration practice involves representing individuals. Many of them are foreign nationals of limited means who recently entered the United States. They may need help with such matters as a visa, a work authorization, an asylum application, or a cancellation of removal. This practice is characterized by frequently stiff application fees (in the hundreds of dollars or

more) that must be collected from the client and then forwarded to the federal government. Legal proceedings may move erratically or slowly. In addition, Yang's clients often are not familiar with and do not understand the concept of an hourly rate.

This attorney disciplinary matter concerns several issues with Yang's client trust account and his financial recordkeeping. Two audits by the Client Security Commission (CSC) are relevant. While this proceeding arises out of a 2021 audit, we discuss both audits to provide important factual context.

**A. The 2014 Audit.** In 2014, an audit was initiated on Yang's trust account that revealed issues with his practices. Yang had recently moved to working part-time; as a result, he started performing the firm's bookkeeping and accounting himself. Regarding the latter decision, he wrote to the Board, "This apparently, in hind sight, was not a wise decision but economy and the need to down size seemed to require it." Yang further wrote that he was "work[ing] to meet the requirements," and would "be in full compliance."

As a result of this audit, the Board issued Yang two private admonitions in April 2018. First, it admonished him for not reconciling his client trust account every month and for falsely certifying on CSC questionnaires for the previous eight years that he was reconciling that account. Second, it admonished him for failing to maintain records showing trust account distributions for clients and for not notifying clients when making withdrawals against their balances in the client trust account.

**B. The 2021 Audit.** In November 2021, the CSC learned that Yang's client trust account was overdrawn by $19.55. Two months later, it initiated an audit of his trust account and requested additional documentation for the audit period of August 2021 to January 2022.

From the information that Yang provided and from his subsequent hearing testimony, it emerged that Yang's clients typically paid a flat fee retainer that he deposited into the firm's client trust account. After that, Yang did not have a clear process for compensating himself. Yang admitted that he did not utilize milestones to determine when he should withdraw fees because, in his view, "there is no way to set a bright line when a milestone is going to be" in immigration cases.

Yang still did his own bookkeeping as he had in 2014. He maintained that he performed some form of a "reconciliation" each month, but it soon became clear that he failed to do triple reconciliations.

When Yang withdrew funds from the client trust account to compensate himself, he did not provide contemporaneous written notices and accountings to his clients. He claimed this was not possible because of the "nature of immigration practice." Instead, he used a shortcut that he had devised. Clients would receive the following "receipt/notice" when they made a payment:

> This receipt is also your notice of withdrawal if this payment is part of your payment plan/schedule. If you are not on a payment plan/schedule, the attorney fee is withdrawn when you receive a copy of the filed . . . document.

This "receipt/notice" did not specify the time, amount, or purpose of each withdrawal.

Yang also would keep a cushion of firm funds in the trust account to cover client-related expenses that could arise. At the time of the proceeding, this was about $1,000. He had previously kept about $2,000 of the firm's money in the trust account and had been instructed by the Office of Professional Regulation in 2014 that $100 would typically be appropriate. He did not maintain a separate ledger for those firm funds in the trust account.

In April 2022, the auditor sought further information. This time, the auditor requested documentation of Yang's triple monthly reconciliations for the audit period, outstanding checks and deposits, and client ledger balances. The auditor also asked why Yang had failed to provide proper notice and accounting when withdrawing amounts from the trust account. Yang responded with a letter. Therein, Yang maintained that it is uncertain when the United States government will cash immigration application fee checks, and this makes it very difficult for an immigration attorney to triple reconcile. Further, he asserted that his clients received information about the work performed on their case. He urged that the "receipt/notice" adequately advised clients concerning his withdrawal of funds from the trust account. In any event, the auditor himself was not able to perform a triple reconciliation because Yang had not provided sufficient documentation.

The auditor discovered many additional problems with Yang's accounting and financial practices. He had not been maintaining records of checks and deposits that were uncleared. He did not keep a record of client ledger balances for clients who had a balance in the client trust account. There were multiple entries on his trust account check register labeled "Balance Adjustment" that altered the overall balance but were not identifiable on the monthly statements. Additionally, he had falsely certified on the CSC's combined statement and questionnaire—for three years in a row—that he was completing "reconciliations of his trust account balances with bank statement balances and individual client ledger balances."

When asked about failing to remedy the issues identified in the 2014 audit, Yang later acknowledged, "I have tried very hard but no, I have not succeeded in doing so."

**C. This Proceeding.** On May 8, 2023, the Board filed a complaint alleging that Yang had violated various Iowa Rules of Professional Conduct, including rule 32:1.15(a), (c), and (f) on safekeeping property and using a client trust account, and rule 32:8.4(c) on misconduct. Further, it alleged that his conduct violated various Iowa Court Rules relating to client trust accounts, including rule 45.1 on the requirement of a client trust account, rule 45.2(3)(*a*)(2), (7), and (9), requiring maintenance of certain records and reconciliation, and rule 45.7(4) requiring notice and accounting when withdrawing advance fees from a trust account. Yang did not timely answer the complaint, and the commission deemed the factual allegations in the complaint admitted. On August 11, the parties proceeded to a hearing on sanction.

Throughout the hearing, Yang generally defended his current way of doing things. He justified leaving money in the trust account because it generates interest under IOLTA for worthy causes. He admitted that he "[p]retty much" takes money out of the trust account when he needs it as opposed to having standard milestones. He commented, "Well, sanction me, then, if I don't take out money fast enough after I earn it." He argued that it would not be cost-effective to hire a separate bookkeeper. He noted that immigration cases can move extremely slowly, and the federal government can take a long time to cash application fee checks. He also pointed out that no client had complained to the Board about his trust account practices.

The commission found the following mitigating factors: his "immigration practice serve[d] an underserved community," he has "engaged in pro bono work," and there was "no evidence of actual client harm." Regarding his plans to retire, it said, "The Commission notes that Yang also asserts that his impending retirement should be perceived as a mitigating factor, however, the Commission

disagrees as Yang testified that he still hoped to continue . . . some legal work post-retirement." (Citation omitted.)

The commission found the following aggravating factors:

> 1. Yang is an experienced attorney with almost [thirty] years of practice.

> 2. Yang represents vulnerable clients who are generally unfamiliar with the American legal system and may be less likely to understand their rights in relation to payment and reimbursement of unused legal fees. This falls as both a mitigating and aggravating factor.

> 3. Yang has been admonished previously for similar conduct—trust account violations, misrepresentations in CSC questionnaires, and lack of diligence.

> 4. Yang's misconduct involves false reporting to the CSC that he was performing reconciliations of his CTA. These misrepresentations are both an ethical violation and an aggravating factor.

> 5. Yang has never triple reconciled, has no current plan on how to rectify these recordkeeping concerns moving forward, and does not plan to hire a bookkeeper, thereby suggesting a lack of understanding of the wrongness of his actions.

> 6. While Yang admitted to wrongdoing, he fails to fully accept responsibility, but instead asserts that his conduct is excused because the triple reconciliation requirement is too onerous for a solo immigration practice and lack of guidance and assistance from the CSC, despite testifying he has not recently reviewed the trust account guidance on the Iowa Judicial Branch website, nor taken any CLEs on trust accounting, nor reviewed Iowa Supreme Court disciplinary decisions for the past fifteen years, nor followed the guidance of the CSC auditors to add milestones to his flat fee contracts to assist in determining when it is appropriate to withdraw funds, nor sought advice of other solo practitioners on how they comply with the accounting requirements. In sum, Yang's response to the audit and the Complaint reflects a disregard for the fundamental safekeeping duties that all Iowa attorneys owe to their clients.

> 7. Yang violated multiple rules . . . .

(Citations omitted.)

In its report and recommendation, the commission found that the Board proved by a convincing preponderance of the evidence that Yang violated Iowa Rules of Professional Conduct 32:1.15(a), (c), (f) (2021), and 32:8.4(c), and Iowa Court Rules 45.1 (2021), 45.2(3)(*a*)(2), (7), (9), and 45.7(4). As a sanction, the commission recommended that Yang's license should be suspended for sixty days. Further, the commission recommended that Yang should only be permitted to return to the practice of law if he attended four hours of trust accounting continuing legal education (CLE) courses. It also recommended that he be required "to hire and keep a bookkeeper/accountant to manage his trust account for the duration of his years of practice or that he practice under the supervision of another attorney who maintains full responsibility for the firm's client trust account and all written notices and accounting to clients."

Yang appealed the commission's ruling to this court. Shortly thereafter, he asked for leave to withdraw the appeal, explaining that he had "retired on December 31, 2023," and "filed to relinquish his license on January 29, 2024." We granted his request to withdraw the appeal and now proceed as if no appeal had been taken pursuant to Iowa Court Rule 36.21 (2021). *See* Iowa Ct. R. 36.22(4).

Yang's retirement, however, would not affect our ability to decide the case. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Newport*, 955 N.W.2d 176, 185 (Iowa 2021) (stating that a "pending application for retirement is a mitigating factor"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 925 N.W.2d 163, 170 (Iowa 2019) (imposing a two-year suspension after stating that "a lawyer may not avoid the disciplinary process involving a potential revocation of the lawyer's license through a strategy of voluntary retirement"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 265 (Iowa 2011) (stating that even though an attorney was retired and had a suspended law license "we still ha[d] the authority to

sanction him upon a finding that he [violated the rules]"); Iowa Ct. R. 34.10(1) (2021) (stating that there is jurisdiction over "any formerly admitted attorney with respect to acts committed prior to . . . retirement").[1]

### III. Standard of Review.

We review the record below de novo. Iowa Ct. R. 36.21(1); *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Leitner*, 998 N.W.2d 627, 633 (Iowa 2023). The Board has the burden of proving the attorney's misconduct "by a convincing preponderance of the evidence." *Leitner*, 998 N.W.2d at 633 (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Johnson*, 988 N.W.2d 399, 406 (Iowa 2023)). This is true even where "the responding attorney has essentially admitted the Board's allegations through the attorney's failure to answer." *Id.* We consider the Board's factual allegations admitted but are not bound by its allegations of law. *Id.*

### IV. Review of Alleged Ethical Violations.

**A. Trust Account Recordkeeping and Notice Violations.** The Board alleges that Yang violated Iowa Rule of Professional Conduct 32:1.15(a), (c), (f), and Iowa Court Rules 45.1, 45.2(3)(*a*)(2), (7), (9), and 45.7(4). "These rules govern attorneys' responsibilities with regard to client trust accounts." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Clarity*, 838 N.W.2d 648, 655 (Iowa 2013).

1. *Failure to maintain proper records.* Iowa Rule of Professional Conduct 32:1.15(a) provides, "Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation." A comment to the rule states, "A lawyer should maintain on a current basis books and records in accordance with generally accepted accounting practice and comply with any recordkeeping rules established by law or court order." *Id.* r. 32:1.15 cmt. [1].

---

[1]The Office of Professional Regulation website indicates that Yang's Iowa law license is still active as of April 25, 2024.

Rule 32:1.15(f) states that "[a]ll client trust accounts shall be governed by chapter 45 of the Iowa Court Rules." *Id.* r. 32:1.15(f). Iowa Court Rule 45.2(3)(*a*) in turn requires lawyers to maintain certain financial records. These include:

> (2) Ledger records for all client trust accounts showing, for each separate trust client or beneficiary, the source of all funds deposited, the names of all persons for whom the funds are or were held, the amount of such funds, the descriptions and amounts of charges or withdrawals, and the names of all persons or entities to whom such funds were disbursed.
>
> . . . .
>
> (7) The physical or electronic equivalents of all checkbook registers, bank statements, records of deposit, prenumbered canceled checks, and substitute checks provided by a financial institution.
>
> . . . .
>
> (9) Copies of monthly trial balances and monthly reconciliations of the client trust accounts maintained by the lawyer.[2]

*Id.* r. 45.2(3)(*a*)(2), (7), (9). We conclude that Yang violated rule 32:1.15(a) and (f) and rule 45.2(3)(*a*)(2), (7), and (9) because he failed to maintain client ledger sheets, records of outstanding checks and deposits, and information on client subaccounts and because he did not complete monthly triple reconciliations. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Noyes*, 936 N.W.2d 440, 445–46 (Iowa 2019) (finding recordkeeping violation under rules 32:15(f) and rule 45.2(3)); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Smith*, 904 N.W.2d 154, 159 (Iowa 2017) (finding the same violations); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Kersenbrock*, 821 N.W.2d 415, 419–20 (Iowa 2012) (finding recordkeeping violation under rule 32:1.15(a)).

---

[2]In October 2022, Iowa Court Rule 45.2(3)(*a*)(9) was amended to state, "Copies of monthly lists of individual client ledger balances and monthly triple reconciliations of bank statement balance to check register balance to sum of individual client ledger balances of the client trust accounts maintained by the lawyer." Iowa Ct. R. 45.2(3)(*a*)(9) (2022).

2. *Withdrawing funds while failing to provide proper notice and accounting.* The Board alleges that Yang did not have a proper system for withdrawing funds from the client trust account for his compensation and did not send proper notices and accountings to his clients when he withdrew funds from the trust account.

Iowa Rule of Professional Conduct 32:1.15(c) states, "A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred." We find that Yang violated rule 32:1.15(c) by failing to develop or follow reasonable ground rules for when to withdraw funds from the trust account. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Said*, 869 N.W.2d 185, 193 (Iowa 2015) ("The facts revealed Said periodically withdrew fees with no clear connection to any milestone in the case, any specific work performed, or any relationship to the services remaining to be performed."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Piazza*, 756 N.W.2d 690, 698 (Iowa 2008) (per curiam) (explaining that attorneys may set in the fee agreement reasonable milestones).

Iowa Court Rule 45.7(4) provides, "A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal." We agree that Yang violated this rule because the "receipt/notice" did not advise the client of the actual time, amount, or purpose of the withdrawal.

**B. Commingling Violation.** The Board alleges that Yang violated Iowa Rule of Professional Conduct 32:1.15(a) and (f) and Iowa Court Rule 45.1 by leaving $1,000 of his own money in the client trust account.

Iowa Court Rule 45.1 requires lawyers to deposit client funds in an interest-bearing trust account. Further, it prohibits a lawyer from depositing

"funds belonging to the lawyer or law firm" in the trust account with an exception for money "reasonably sufficient to pay or avoid imposition of fees and charges that are [the] lawyer's or law firm's responsibility." *Id.* r. 45.1(1).

In 2014, Yang had been told by the Office of Professional Regulation that he was "permitted to have a small amount of [his] funds in the trust account itself to cover such things as wire transfer fees, but this usually does not exceed $100." We conclude that the gap between the informal guidance Yang had been given in 2014 and what he actually did several years later is insufficient for us to find a violation of rule 45.1 by a convincing preponderance of the evidence. The point is: Yang was permitted to keep a relatively small but consistent sum of his own money in the client trust account to cover charges that would be his firm's responsibility.

In our view, there may be some discrepancy between rule 45.1, which allows a sum to be left in the account sufficient to cover any "fees and charges that are [the] lawyer's . . . responsibility," *id.*, and rule 32:1.15(b), which allows a sum to be left in the account "for the sole purpose of paying bank service charges on that account," Iowa R. of Prof'l Conduct 32:1.15(b). The Board has not alleged a violation of rule 32:1.15(b).

We note also that the *Law of Lawyering* has commented,

> Although the permission to place an amount of personal funds in trust to cover bank fees might have been extended to allow lawyers also to reduce the risk of overdrafts, there do not appear to be any jurisdictions in which this is permitted. This is most likely because rule draftsmen and bar regulators want to encourage the most meticulous of trust bookkeeping, so that overdrafts never occur. If a "cushion" of personal funds was allowed, this "fail-safe" might encourage slightly less attention to preventing overdrafts altogether.

1 Geoffrey C. Hazard et al., *The Law of Lawyering* § 20.04, at 20-14 n.9 (4th ed. Supp. 2023-2). *But see Att'y Grievance Comm'n v. Sliffman*, 625 A.2d 314, 319

n.3 (Md. 1993) ("We do not suggest that an attorney may not maintain a continuous balance in an attorney trust account sufficient to avoid bank charges. We are not required to address the propriety of an attorney maintaining an additional modest, constant balance as a guard against clerical errors. We can perceive of no serious objection to this practice, however, if the records clearly show what is being done and why, and the amount established as a 'cushion' remains constant."). Regardless, the Board has not persuaded us here that the sum of $1,000 is so excessive as to result in an ethical violation. The Vermont Supreme Court has made a cogent observation regarding the rule we have adopted as rule 32:1.15(b):

> The rule provides no guidance as what is an appropriate amount, and we would imagine that the amount would vary depending on the size of the firm and the type of practice. In general, the trust account rules are specific, and a diligent attorney is able to maintain his or her accounts in accordance with the rules. Rule 1.15(b) provides neither an appropriate dollar amount nor a method for its calculation. We believe that before attorneys are disciplined under this rule for holding small amounts of money in their trust accounts, they need specific standards. We also believe that this lack of guidance is better remedied by rule change than by panel decision.

*In re PRB Docket No. 2014.133*, 136 A.3d 564, 566–67 (Vt. 2015) (finding $157.57 does not violate the rule and commenting in dicta that $1,000 "may be an excessive amount").

The Board does not claim that Yang left this money in the account to defer tax liability, to avoid the claims of creditors, or because he regarded the client trust account as a melting pot from which he could pay both client and personal expenses. *Cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Smith*, 885 N.W.2d 185, 193 (Iowa 2016) ("Smith had one personal and business bank account for several years—and it was the trust account."); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Cross*, 861 N.W.2d 211, 218–19 (Iowa 2015) (finding a violation of these rules

where an attorney admitted that he "commingled personal and business funds with client funds and used the trust account to pay personal and business expenses"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Ricklefs*, 844 N.W.2d 689, 695, 697–98 (Iowa 2014) (finding the same violation when an attorney admitted to keeping personal funds in his trust account for years because of "financial problems related to unpaid medical bills from an emergency surgery"). For the reasons stated, we do not find a violation of rules 32:1.15(a) and 45.1.

**C. False Statement Violations.** The Board claims that Yang violated Iowa Rule of Professional Conduct 32:8.4(c) when he certified, falsely, that he was properly reconciling his trust account every month.

Iowa Rule of Professional Conduct 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to: . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." We find Yang violated rule 32:8.4(c) by knowingly making false representations on his annual CSC report. He had been admonished in 2014 over his failure to perform reconciliations and knew he had not corrected things. *See Kersenbrock*, 821 N.W.2d at 421 (finding a violation of this rule when an attorney falsely certified she was performing reconciliations).

**V. Consideration of Appropriate Sanction.**

Having found that Yang committed these rule violations, we must now determine the appropriate sanction. We respectfully consider—but are not bound by—the commission's recommendation. *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Mbanza*, 996 N.W.2d 711, 720 (Iowa 2023). In crafting a sanction, we weigh "the nature of the violations, the need for deterrence, protection of the public, maintenance of the reputation of the Bar as a whole, and the violator's fitness to continue to practice law." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Heggen*, 981 N.W.2d 701, 713 (Iowa 2022) (quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Earley*, 729 N.W.2d 437, 443 (Iowa 2007)). We will also consider the aggravating

and mitigating circumstances of the case. *Id.* While "[t]here is no standard sanction for a particular type of misconduct," this court "seek[s] a degree of consistency in our disciplinary cases with respect to sanctions." *Id.* (first quoting *Earley*, 729 N.W.2d at 443; then quoting *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Taylor*, 814 N.W.2d 259, 268 (Iowa 2012)). So, our analysis is guided by previous cases dealing with similar trust account violations.

"Our sanctions for trust account violations have ranged from a public reprimand to license revocation." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Lubinus*, 869 N.W.2d 546, 550 (Iowa 2015); *see also Smith*, 885 N.W.2d at 195; *Cross*, 861 N.W.2d at 225. A public reprimand is proper "when the violation was relatively minor and isolated." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 588 (Iowa 2011); *see also Iowa Sup. Ct. Att'y Disciplinary Bd. v. Akpan*, 951 N.W.2d 440, 456–57 (Iowa 2020) (issuing a public reprimand where the attorney had neither systemic violations nor a prior disciplinary record); *cf. Iowa Sup. Ct. Att'y Disciplinary Bd. v. Nelissen*, 871 N.W.2d 694, 701–02 (Iowa 2015) (imposing a thirty-day suspension after determining a public reprimand would be inappropriate where the attorney had prior public reprimands over trust account issues, had been reminded of the reconciliation requirement, and had made a misrepresentation on the CSC questionnaire). Yang's conduct spanned several years, he misrepresented what he was doing on the CSC questionnaire, and at the time of the commission hearing, he had no plan to remedy his trust account issues. Therefore, a more serious sanction than a reprimand is warranted.

This is not a "jump the gun" case where the attorney failed to deposit advance fees into the client trust account or withdrew fees which they knew had not yet been earned. In some of those cases, we have imposed thirty-day suspensions. *See Nelissen*, 871 N.W.2d at 702; *Lubinus*, 869 N.W.2d at 553–54;

*Iowa Sup. Ct. Att'y Disciplinary Bd. v. Santiago*, 869 N.W.2d 172, 179, 184–85 (Iowa 2015); *Kersenbrock*, 821 N.W.2d at 419, 422; *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 441–43 (Iowa 2012).

Among the foregoing cases, *Iowa Supreme Court Attorney Disciplinary Board v. Santiago* may be the closest analog. 869 N.W.2d 172. As here, the stage was set when the attorney was previously audited. *See id.* at 174. This revealed that he was not maintaining the proper records, not triple reconciling, and not sending notices or accountings to his clients when he withdrew funds. *Id.* No formal complaint was filed at that time. *Id.* However, two years later, the same circumstances continued, and a complaint was filed. *Id.* at 178. The attorney admitted his "reconciliation had not complied with the rules and that he withdrew earned retainers from the trust account without the required notice and accounting." *Id.* Unlike here, the attorney also had failed to deposit retainers in his trust account. *See id.* at 179. We did find several mitigating factors—he served an underserved community, had cooperated in the proceedings, and had no official disciplinary history. *Id.* at 182.

We also imposed a thirty-day suspension in a trust account case where the attorney, like Yang, had significant ongoing problems with conforming his trust account practices to the requirements of the rules. *Noyes*, 936 N.W.2d at 446–47, 449–50. The attorney there had a prior reprimand for a trust account-related issue and there was an additional violation of providing improper financial assistance to client. *Id.* at 442, 444–45. In addition, we imposed a thirty-day suspension in a case involving "failure to make trust account deposits or account for withdrawals, and . . . wholesale neglect of the obligation to maintain records, [which] created a pattern of rule violations." *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Eslick*, 859 N.W.2d 198, 203 (Iowa 2015).

We have imposed sixty-day suspensions in trust account cases involving seemingly more egregious facts than here. *See, e.g.*, *Smith*, 885 N.W.2d at 193, 198 (involving an attorney who also used her trust account as her personal bank account). We have imposed even longer suspensions for trust account violations depending on the facts. *See, e.g.*, *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Morris*, 847 N.W.2d 428, 436–37 (Iowa 2014) (imposing a six-month suspension for serious trust account violations on an attorney with three prior suspensions); *Ricklefs*, 844 N.W.2d at 702 (imposing a three-month suspension on an attorney who commingled funds as part of his trust account violations and "tried to delay and deflect the investigation of his trust account practices virtually up until the December 2013 disciplinary hearing"); *Iowa Sup. Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359–60 (Iowa 2013) (imposing a three-month suspension on an attorney who "conver[ted] . . . funds before they were earned" and "engaged in conduct that displayed contempt for our rules governing trust accounts and placed client funds at risk").

Yang's case presents both aggravating and mitigating factors. He does have significant experience as an attorney, *see Smith*, 904 N.W.2d at 161, and he was previously admonished privately for the same problems after the 2014 audit, *see Smith*, 885 N.W.2d at 196. Moreover, Yang was publicly reprimanded in 2001 for neglecting to timely file an appeal and again in 2012 for making a misrepresentation in an appeal and failing to inform his client that he could file a motion to reopen the proceeding alleging ineffective assistance of counsel. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Yang*, 821 N.W.2d 425, 430–31 (Iowa 2012). Although unrelated to the present charges and somewhat dated, these reprimands are aggravating to some extent. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Goedken*, 939 N.W.2d 97, 108 (Iowa 2020).

On the other hand, Yang does perform considerable pro bono work and has spent his career working for an underserved community. *See Said*, 869 N.W.2d at 194–95; *Yang*, 821 N.W.2d at 431. There is no indication that any client was harmed by, or even complained about, Yang's trust account practices. *See Noyes*, 936 N.W.2d at 449. In addition, Yang's pending application for retirement is a mitigating factor. *See Goedken*, 939 N.W.2d at 109.

We also agree with the commission that Yang's failure to accept responsibility is an aggravating factor. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Sobel*, 997 N.W.2d 421, 433 (Iowa 2023). A continuing theme of Yang's testimony was how difficult and onerous the system is for solo immigration law practitioners. At the end, he told the Board:

> Sanction me as you see fit. I know I'm going to run into it but don't just get me. Let's get some studies down and get some solutions hopefully. And as I say, I'll be glad to come back in a few years to form another task force to reform the system. I'll be happy to do that.

Yang raises potentially legitimate concerns about our trust account rules and whether changes could be made, for example, when a client is paying a flat fee that falls below a certain dollar threshold. As Yang points out, in his immigration practice, many clients really cannot afford any fee so they pay a minimal fee, clients "can't comprehend what fee payment per hour is," and the case frequently proceeds at a glacial pace while the client relocates from place to place. But Yang's interest in changing the system cannot justify his noncompliance with the existing rules. We expect all Iowa attorneys to follow the rules as they are—not as they wish they might be.

In light of the foregoing, we have decided to suspend Yang's license for thirty days. We will also adopt the commission's recommendation that Yang be required to attend four hours of CLE on trust accounting before any resumption of practice. We do not adopt the commission's recommendation that Yang be

required to hire a bookkeeper/accountant or practice under the supervision of another attorney who maintains full responsibility for the firm's trust accounting.

## VI. Conclusion.

We suspend Yang's license to practice law in this state with no possibility of reinstatement for thirty days. The suspension will begin ten days after the date of the suspension order. Iowa Ct. R. 34.23(1) (2024). This suspension shall apply to all facets of the practice of law. *Id.* r. 34.23(4). Yang must comply with all the requirements of Iowa Court Rule 34.23(2), including notifying his clients of his suspension. While Yang indicates that he has taken steps to retire, the suspension will be lifted only upon a showing that he has attended four hours of CLE on trust accounting.

### LICENSE SUSPENDED.

Christensen, C.J., and Waterman, Oxley, and McDermott, JJ., join this opinion. McDonald, J., files an opinion concurring in part and dissenting in part, in which May, J., joins.

#23–1833, *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Yang*

**McDonald, Justice (concurring in part and dissenting in part).**

This matter is before the court for disposition with respect to sanctions pursuant to Iowa Court Rule 36.21. Because this matter only involves the question of sanctions under Iowa Court Rule 36.21, the sufficiency of the evidence supporting each of the ethical violations is not properly before the court. *See Iowa Sup. Ct. Att'y Disciplinary Bd. v. Tindal*, 949 N.W.2d 637, 646–648 (Iowa 2020) (McDonald, J., concurring in part and dissenting in part). I thus concur in all parts of the court's opinion except part IV reviewing the sufficiency of the evidence supporting each of the violations.

The Iowa Court Rules set forth a two-track process for resolving attorney disciplinary matters: track one is submission to this court without appeal only for the purposes of determining the appropriate sanction pursuant to Iowa Court Rule 36.21; and track two is an appeal to this court to contest both the violation(s) and sanctions pursuant to Iowa Court Rule 36.22. These are separate and distinct rules, as I discussed in *Iowa Supreme Court Attorney Disciplinary Board v. Tindal*:

> After an attorney disciplinary hearing, when the commission recommends a reprimand, suspension, or revocation, the commission must file its findings of fact, conclusions of law, and recommendations with the clerk of the commission. See Iowa Ct. R. 36.19(1). The clerk of the commission in turn "must promptly file the report with the supreme court clerk" and "[t]he matter then stands for disposition in the supreme court." *Id.* This court may dispose of the matter by one of two methods.

> First, if the attorney does not appeal the commission's findings and conclusions, this court may review the recommended sanction. The rule provides if the attorney does not appeal, this court "will notify the parties that they may file written statements with the supreme court in support of or in opposition *to the discipline* the grievance commission recommends." Iowa Ct. R. 36.21(1) (emphasis added). On de novo review of the record, "the supreme court *may impose a lesser or greater sanction* than the discipline the

grievance commission recommends." *Id.* (emphasis added). The rule does not provide for a mechanism for the parties to contest the commission's findings and conclusions or the authority for this court to review the commission's findings and conclusions.

> Second, an attorney or the board may seek appellate review of the commission's findings, conclusions, and recommended sanction. Rule 36.22 provides an attorney "may appeal to the supreme court from the report or recommendation the grievance commission files." Iowa Ct. R. 36.22(1). The rule also provides the board "may apply to the supreme court for permission to appeal from a determination, ruling, report, or recommendation of the grievance commission." Iowa Ct. R. 36.22(2). When the board seeks appellate review, this court "may grant such appeal in a manner similar to the granting of interlocutory appeals in civil cases under the Iowa Rules of Appellate Procedure." Iowa Ct. R. 36.22(2). In either case, once an appeal is docketed, "the appeal must proceed pursuant to the Iowa Rules of Appellate Procedure." Iowa Ct. R. 36.22(4).

949 N.W.2d at 646 (alteration in original).

Today, the court continues to treat rules 36.21 and 36.22 identically despite the fact there are two separate rules providing for two separate and distinct processes. The court reviews the sufficiency of the evidence supporting the violations even though rule 36.21 does not provide for it and even though no party raised or briefed the issues. Without any adversarial briefing (in particular without affording the Board the opportunity to defend the violations), the court concludes the Board failed to prove one of the alleged violations. In my view, the court's approach is contrary to the plain language of the Iowa Court Rules and contrary to the party presentation rule:

> This court has processed and reviewed all attorney disciplinary matters identically without regard to whether the attorney has appealed. If the attorney has chosen not to appeal the commission's findings and conclusions and instead opted to present a statement regarding sanctions pursuant to rule 36.21, this court has reviewed anew all of the commission's findings, conclusions, and recommended sanction even where the parties have not raised the issues. If the attorney or board has appealed the commission's findings and conclusions pursuant to rule 36.22, this court has reviewed anew all of the commission's findings, conclusions, and recommended sanctions even where the parties have not

> cross-appealed or even raised the issues. This court's identical treatment of proceedings under rule 36.21 and rule 36.22 is contrary to the text of the relevant rules, contrary to the rules of appellate procedure, and contrary to controlling precedents. This court's identical treatment of proceedings under rule 36.21 and rule 36.22 is also contrary to a basic rule of construction: "[w]e presume statutes or rules do not contain superfluous words." *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 75 (Iowa 2015) (alteration in original) (quoting *State v. McKinley*, 860 N.W.2d 874, 882 (Iowa 2015)). But we have rendered the entirety of both rules superfluous. If rules 36.21 and 36.22 mean the exact same thing in practice, why do we have separate rules at all?

*Id.* at 647–48 (alteration in original).

This court is the body that drafts and adopts the Iowa Court Rules. We have adopted two separate and distinct rules governing disposition of attorney disciplinary proceedings. Rather than ignoring the Iowa Court Rules, I would follow them and not address the sufficiency of the evidence supporting the alleged ethical violations. I thus concur in part and dissent in part.

May, J., joins this concurrence in part and dissent in part.